# MARSHALL *v.* RUSSELL.

*(Knoxville.* October 31, 1893.)

GIFT. *Sufficiency of delivery.*

Marshall went to Shown's office and handed him a note case containing a batch of notes aggregating about $12,000, stating that he had given them to his wife, and that he desired Shown, who was an attorney, to collect or renew them in the name and for the benefit of the wife. Shown accepted the trust. After Marshall had left Shown's room, but before he had retired from the building, he returned and obtained one of the notes, for $1,000, and immediately took and presented it to another person (Brumley), stating his reasons for making the gift.

*Held:* The Court cannot affirm that the delivery of the $1,000 note to Shown was not inadvertent, and therefore the subsequent gift to Brumley is valid.

Cases cited and approved: McEwen *v.* Troost, 1 Sneed, 185; 2 Edw. Ch. (N. Y.), 92; 46 Maine, 48; 104 Pa. St., 593.

---

FROM GREENE.

---

Appeal from Chancery Court of Greene County. JNO. P. SMITH, Ch.

HENRY H. INGERSOLL for Marshall.

A. B. WILSON for Shown.

DANA HARMON for Brumley.

McALISTER, J. This is an appeal from the Chancery Court of Greene County, and the contest presented in the record is in respect to the ownership of a certain note. The note in controversy was executed by one T. D. Russell to Patrick Marshall, for the sum of $1,040, for a loan of money, and was secured by a deed of trust on land. The title to this note is claimed by the defendant, Horace Brumley, and by A. N. Shown, the administrator of Patrick Marshall, and also by Bridget Marshall, the widow of the intestate. The original bill was filed by Bridget Marshall against A. N. Shown, administrator, T. D. Russell, and Horace Brumley, in which she alleged that her husband, the said Patrick Marshall, departed this life on July 22, 1890, and that A. N. Shown is his administrator; that on July 5, 1890, the said Patrick Marshall gave to complainant said note, and delivered the same, with others, to said Shown, for collection for her benefit, or renewal in her name, as he should deem best, and that said note is her property. Complainant further alleges that, after said gift was complete, the said Shown, to whom the note had been delivered for complainant, allowed said Patrick Marshall, at his request, to have possession of said note for a short time; that, while in said Patrick's possession, said note was lost or mislaid, or in some other manner passed out of his possession, and was not found until after his death, when it was discovered in the possession of defendant, Horace Brumley. The

bill further alleges that the said Brumley now claims the note as his own, and denies complainant's right thereto.   A. N. Shown, the administrator, answered the bill, admitting that the said Patrick Marshall, on July 5, 1890, delivered said note, with other notes, to respondent, for collection or renewal, but averred that, soon thereafter, he reclaimed the note in controversy, and the same was returned to him before renewal or the collection of any part thereof.   Defendant avers that, if it was the intention of said Patrick Marshall to make a gift of this note to complainant, that said gift was not consummated, and the title to the same remained in said Patrick Marshall, and has passed to defendant as assets to be administered.

The administrator filed his answer as a cross-bill, in which he states that said note was then in the possession of Horace Brumley, who claimed the same as a gift from the intestate.   He then charges that said Brumley was not related to Patrick Marshall, nor was said Marshall under any obligation, legal or moral, to make him such a benefaction.   Respondent further averred that the said Patrick, at the time of the alleged gift to Brumley was old, feeble in body, impaired in intellect, and incapable of making a valid gift of his property.

The administrator denied, in the first place, that any such gift had been made to Brumley, and, in the second place, if such a gift had been made, it was invalid for want of mental capacity on the

part of the intestate. The defendant, Horace Brumley, answered the bill and set up his title to the note. The answer states that on July 5, 1890, Patrick Marshall gave and delivered to Defendant Brumley the note in controversy on T. D. Russell for $1,040. Defendant further states that said gift was made without solicitation on his part, and freely and voluntarily on the part of deceased. Defendant denies that the said Patrick Marshall was of unsound mind at the time said gift was made, but avers that his mind was clear, and that he fully understood and comprehended the transaction. The cause went to proof, and the Chancellor decreed that Horace Brumley had acquired a valid title to said note by gift from the said Patrick Marshall, and accordingly the original bill of Bridget Marshall, as well as the cross-bill of A. N. Shown, administrator, were both dismissed. From this decree the administrator and widow appealed, and have assigned errors. The first error assigned on behalf of the administrator is that at the time of the alleged gift Patrick Marshall did not have sufficient mental capacity to comprehend the transaction.

In the case of *A. N. Shown, Administrator*, v. *Bridget Marshall*, decided at the present term, the question was presented respecting the mental capacity of Patrick Marshall to make a gift of about $12,000 in notes to his wife, the said Bridget, and the Court held the gift to be valid. The notes involved in that suit were given to the wife on

the same day the note in controversy was presented to Horace Brumley, and the same proof upon which the Court adjudicated in favor of the mental capacity of the intestate is embodied in this record. The additional point, however, is made on this branch of the case, that even if it be conceded that Patrick had sufficient mental capacity to make a valid gift to his wife, yet the gift in this case was made to a stranger, who was in nowise related to him, and who had no natural claim upon his bounty, and that a higher degree of mental capacity is required to sustain a gift in the latter than in the former case. If this distinction be conceded to be sound, we find, upon an examination of the record, ample evidence of mental capacity to sustain such a gift, even to a stranger.

It is insisted on behalf of Bridget Marshall that the decree of the Chancellor is erroneous, for the reason that the evidence shows that said note was given to and received by her agent, A. N. Shown, and left in his possession for her, and that the gift was completed by actual delivery to said agent; that the gift was then irrevocable, and that Patrick Marshall had no right to withdraw the note from Shown and make another disposition of it.

The settled rule is that a parol gift of a chattel or chose in action, whether it be a gift *inter vivos* or *causa mortis*, does not pass the title to the donee without delivery and transfer of the posses-

sion. The effect of a valid delivery is to place the subject of the gift under the control and dominion of the donee, and his title and right of possession by such gift and delivery become absolute and irrevocable. *McEwen* v. *Troost*, 1 Sneed, 185.

It is therefore essential to the validity of such a gift that the transaction be fully completed—that nothing essential remains to be done. If left incomplete, there exists a *locus pœnitentiæ*, and what has been done may be revoked. An absolute gift, which will divest the donor's title, requires a complete renunciation on his part, and acquisition on the part of the donee, of all the title to and interest in the subject of the gift.

It is, however, settled that the delivery need not be directly to the donee, but may be made to a third party *for* the donee. If the delivery to the third party is simply for the purpose of delivery to the donee, as agent or messenger of the donor, the gift is not completed until the subject of the gift is actually delivered to the donee. In such a case, until the gift is so completed by delivery to the donee, the donor can revoke the agent's authority, and resume possession of the article. When the delivery to the third person is to him in the capacity of a trustee for the donee, and not as agent of the donor, such delivery completes the gift. To constitute such a case, the circumstances should show a full relinquishment of dominion over the property to the trustee for the

purposes of the trust, so that the trustee shall not be the agent of the donor, but shall act for the donee instead. *Menchen* v. *Merrill*, 2 Edw. Ch., 333; *Neufville* v. *Thompson*, 3 Edw. Ch. (N. Y.), 92; *Dresser* v. *Dresser*, 46 Maine, 48; *Schott* v. *Lauman*, 104 Pa. St., 593.

The question, then, to be decided is, was the note in controversy delivered by Patrick Marshall to A. N. Shown as trustee for Mrs. Bridget Marshall, the donee, and was there, at the time, such a full renunciation of title and relinquishment of dominion over the property to the trustee for the purposes of the trust as completed the delivery, and constituted a valid gift *inter vivos?* A. N. Shown testified that about July 5, 1890, Patrick Marshall came to his office, and took from his pocket a cloth note-case, and handed it to witness, saying: "'There are my notes. I have given them to my wife, and we want you to take them and collect them.' I asked him if I should pay the sum collected on the notes to him or Bridget, and he said 'Pay them to Bridget; the notes are hers, and I want her to have what you get out of them.'" He said for witness to collect at once, and witness then asked him what he should do if the parties could not pay the notes, and he said: "Take new notes in Bridget's name." Witness again asked him if the notes were hers and if witness must account to her for them, and he replied in the affirmative. Witness then told him he would prepare a memorandum receipt of the

notes for Mrs. Marshall to sign, and take it to her. The said Patrick Marshall then started out of the office, but soon returned, and called for a note on T. D. Russell. Witness does not remember what he said he wanted with the note, but has an impression he said Russell was in town, he wanted to see him about the note. The Russell. note was not returned to witness—heard afterwards he had given this note to Horace Brumley.

W. W. Weems, who was also present on the occasion in question, states that Patrick Marshall came into the office with a wallet in his hand, and told Mr. Shown he wanted him to take his notes and collect them, and pay the money over to Bridget; that if he could not collect them, to renew in Bridget's name. Patrick then started down the stairway, but, before he got down, he came back, and told Mr. Shown he wanted a note from the wallet on Thomas Russell for $1,000. The note was handed him, and he left the room.

It appears that about $12,000 in notes were given to Bridget Marshall, and all were decreed to her in the case of *A. N. Shown, Administrator,* v. *Bridget Marshall,* decided at the present term. Horace Brumley, as already seen, claims the Russell note, which is the subject-matter of the present suit. We are of opinion, upon the facts stated in this record, that while Shown was constituted trustee for the renewal and collection of these notes for the benefit of Bridget Marshall, yet there was not such a renunciation of the title of the

Marshall *v.* Russell.

Russell note, and relinquishment of dominion over it, as to amount to a completed delivery of it to the trustee. This note was not specifically mentioned in the general transfer of the batch of notes to Shown, and the fact that Patrick Marshall, before he had retired from the building, came back to Shown's office and demanded the Russell note, which he carried away, would seem to indicate that he delivered it to Shown through inadvertence, and that he never intended to include that note in the lot of notes given to his wife. It appears that on the same day he went to the store where Horace Brumley was employed and presented him this note. He asked Brumley to read the note, and stated to him that it was secured by deed of trust executed by T. D. Russell and wife. Patrick Marshall also stated to Brumley, at the same time, that he gave it to him because he was just married and needed it. He also stated to Brumley that he had always been kind to him, and he would rather Horace should have the note than any one. Patrick frequently spoke to others of the many acts of kindness extended him by Brumley, and often said that Horace would not lose any thing by such treatment. It further appears that after presenting the note to Brumley, Patrick mentioned the fact to others, and spoke of the reasons that controlled him in making the gift.

We are of opinion the gift is valid, and the decree of the Chancellor is affirmed.