PEOPLES BANK v. JOHN BAXTER et al.—298 S. W. (2d) 732.

Western Section. August 23, 1956.

Petition for Certorari denied by Supreme Court, February 8, 1957.

J. B. Avery, Jr., Alamo, for complainant.

Theo. J. Emison, Alamo, for John Baxter and others, appellants.

R. F. Jerman, R. G. McLean, Alamo, Jas. D. Senter, Jr., Humboldt, for appellee.

HICKERSON, J. Mrs. H. B. Baxter died intestate in Crockett County, Tennessee, on May 6, 1955. This suit presents a contest between Mrs. W. A. Nippers, a daughter of Mrs. Baxter, and the other next of kin of Mrs. Baxter over the proceeds of a certificate of deposit issued by Peoples Bank of Alamo, Tennessee, in the sum of $2,040 and payable to the order of Mrs. H. B. Baxter, "or payable on her death to Mrs. W. A. Nippers." Mrs. Baxter died before the maturity date of the certificate of deposit. Because a controversy had arisen between Mrs. Nippers and the other next of kin of Mrs. Baxter, Peoples Bank filed a bill of interpleader, naming all the next of kin of Mrs. Baxter as parties defendant. The bill was sustained as a bill of interpleader, and the Bank paid into the registry of the Court the full amount of $2,040 under the decree of the Chancery Court.

Mrs. W. A. Nippers answered the bill and for her claim to the proceeds of the certificate of deposit alleged that:

"The acceptance of the money on deposit by complainant and the issuance of said Certificate of Deposit was a plain and valid contract entered into by complainant, and for a good consideration, to pay the money called for in the Certificate to Mrs. H. B. Baxter (if she was living) 'or' to this defendant, Mrs. W. A. Nippers, if the said Mrs. H. B. Baxter was dead."

The other claimants contend that:

1. Mrs. H. B. Baxter was not mentally capable of transacting business on the day the certificate of deposit in question was issued.

2. Mrs. W. A. Nippers induced her mother, Mrs. Baxter, to have the certificate of deposit issued to Mrs. Nip-

pers as the result of fraud and undue influence practiced upon Mrs. Baxter by Mrs. Nippers.

3. Mrs. H. B. Baxter did not intend to leave this fund to Mrs. W. A. Nippers; and the certificate of deposit could not be construed under the applicable principles of law to effectuate such result.

4. The proceeds of the certificate of deposit should be decreed to be a part of the estate of Mrs. H. B. Baxter and distributed according to law to her next of kin, subject to all debts against the estate of Mrs. H. B. Baxter.

The Chancellor found all issues in favor of Mrs. W. A. Nippers and decreed:

"It is therefore the order, judgment and decree of the Court that subject to the valid debts of Mrs. H. B. Baxter, deceased, the said Mrs. W. A. Nippers is entitled to said $2,040.00 and it is the further order of the Court that whatever balance of said money ($2,040.00) remains after payment of all just and valid debts of Mrs. H. B. Baxter, deceased, shall be paid to Mrs. W. A. Nippers and it is so adjudged and decreed. The funeral and medical expenses of Mrs. H. B. Baxter may be paid without delay, upon a check drawn by the Clerk of the Court payable to the creditor and Mrs. W. A. Nippers, Administratrix of the estate of Mrs. H. B. Baxter, and the costs of the cause will be paid by the Clerk out of the funds now in his hands ($2,040.00), this to include the sum of $100.00 to J. B. Avery, Jr., Attorney for complainant, Peoples Bank, the bill of Mrs. Bessie W. Johnson, Reporter, which is $66.89. Any claims against the estate of Mrs. H. B. Baxter which are approved by Mrs. W. A. Nippers, Administratrix, may be paid

out of the fund herein referred to by the Clerk and Master, without delay, the balance of the fund will be held by the Clerk and Master pending further orders of the Court.''

To review that decree John Baxter and others have appealed to this Court.

The questions made by the assignments of error are limited materially by admissions made in this Court in the brief filed in behalf of Mrs. Nippers. She concedes that the certificate of deposit was not a gift inter vivos or causa mortis; nor was it a testamentary disposition of the monies represented by the certificate of deposit. As thus limited, the assignments of error present five determinative questions for this Court to consider.

1. Was Mrs. H. B. Baxter mentally capable of entering into the contract represented by the certificate of deposit in question?

2. Was this certificate of deposit the result of fraud and undue influence of Mrs. W. A. Nippers upon Mrs. Baxter?

3. Should the certificate of deposit have been held invalid because Mrs. Baxter had no independent advice concerning the transaction?·

4. Did the Chancellor err in holding that Mrs. W. A. Nippers was entitled to the proceeds of the certificate of deposit as a donee third-party beneficiary of the contract represented by the certificate of deposit?

5. Did the Chancellor err in holding that Mrs. Nippers was ''entitled to the money called for in and by certificate

of deposit No. A1774, subject to the just debts of Mrs. H. B. Baxter''?

These questions will be considered and determined in the order stated.

On May 21, 1951, Peoples Bank of Alamo, Tennessee, issued its certificate of deposit in the sum of $1,500, No. A1669, for a deposit furnished by Mrs. H. B. Baxter, ''payable to the order of herself, or payable on death of the said Mrs. H. B. Baxter to Mrs. W. A. Nippers on return of this certificate May 21, 1952 after date properly endorsed.'' This certificate was renewed on May 21, 1952, with $500 added to the deposit and Peoples Bank issued its certificate of deposit to Mrs. H. B. Baxter, No. A1688, in the sum of $2,000, ''payable to the order of herself, or payable on her death to Mrs. W. A. Nippers.'' The certificates mentioned herein had the interest for one year added into the face of the certificate and each certificate ran for a period of one year.

Certificate No. A1688 was renewed with an addition thereto on May 25, 1953, and the Bank issued its certificate of deposit No. A1728 to Mrs. H. B. Baxter in the sum of $2,100, ''payable to the order of herself or payable on her death to Mrs. W. A. Nippers.'' This certificate was renewed by the Bank with a reduction, and the Bank issued the certificate of deposit in question in this suit. We here quote that certificate in full.

"Certificate of Deposit  No. A1774
Not subject to check
Peoples Bank   $2000.00
Int.   40.00
Total   $2040.00

"Alamo, Tenn., May 25, 1954

"This Certifies that Mrs. H. B. Baxter has deposited in this Bank Exactly $2040. and 00 Cts. Dollars payable to the order of Herself or payable on her death to Mrs. W. A. Nippers on the return of this Certificate May 25-55 after date properly endorsed.

"Glen Gates, Cashier."

As stated, Mrs. H. B. Baxter was the mother of Mrs. W. A. Nippers. She had several other children all of whom were sons. Mrs. Nippers lived in Jackson, Tennessee; and Mrs. Baxter lived for many years before her death in or near Alamo, Tennessee, with a son or with a granddaughter.

Mrs. Baxter died on May 6, 1955. She was about ninety years old at the time of her death. Mrs. Nippers testified that she personally guaranteed the payment of the funeral bill of Mrs. Baxter; and she made no objection to the provision in the final decree that: ''all just and valid debts of Mrs. H. B. Baxter,'' including all costs of the cause, a fee of $100 to the Solicitor for Peoples Bank who filed the bill of interpleader, and a fee of $66.89 for the court reporter, should be paid out of the proceeds of the certificate of deposit now in the hands of the Clerk and Master. The funeral bill was $756.

■ (1) After a careful review of the evidence, we concur in the ultimate conclusion of fact reached by the Chancellor: Mrs. H. B. Baxter was mentally capable of entering into the contract represented by the certificate of deposit in question.

■ (2) Furthermore, the preponderance of the proof supports the conclusion of the Chancellor that the cer-

tificate of deposit was not issued as a result of fraud or undue influence practiced by Mrs. W. A. Nippers upon her mother, Mrs. H. B. Baxter.

There is evidence in the record that Mrs. Baxter became dissatisfied with the way the last certificate was issued, and that she made a trip to Jackson to get that certificate which she had left with Mrs. Nippers. It is clear that some of the children of Mrs. Baxter persuaded and influenced her to go to Jackson to get the certificate. Mrs. Audrey Fern Williams, the granddaughter of Mrs. Baxter, with whom she lived, testified:

"Q. I will ask you whether or not you or anyone else begged, requested or persuaded or worried your grandmother into going to Jackson in August of '54, when you say she went over there and asked Mrs. Nippers for this certificate? A. Well, of course, they had a big stir and a big row about it, the boys found it out, I didn't aim for her to go, some of them told her that she ought to go and try to get it back."

Mrs. W. A. Nippers testified:

"Q. You thought that had been just like she wanted it, didn't you? A. Yes, she told me when she give me her first four now, the first one, she said, 'Jennie, I have got a little money in the bank and I want to turn it over to you and I want you to go with me to the bank after awhile,' she says, 'I don't want to be on none of my children at my death' and says, 'I want you to put me away nice and pay my expense, and if there is any left I want you to have it, there wouldn't be enough to divide to do any of them any good,' those are the very words she said."

Mrs. Nippers further testified:

"Q. Now after your mother was in your home in May of 1954, she came again along in the summer or August of that same year, didn't she, not for a visit, but she was brought back to your home? A. She came the first day of May, the best I remember, then she came back the 18th and stayed until the 25th and went home, then two or three days or a week or something like that, why Audrey brought her back and I never saw nobody in such a stage, she was just all upset, she told me, said said 'I am just worried to death, Jennie,' she said 'they are just worrying me to death over that little bit of money of mine.' I said, 'Mother, I wouldn't worry, it is yours and do as you please with it.' She said, 'Jennie, I have got it just like I want it and I want it to stay that way.'

"Q. Now who was present when she said that? A. Well I don't know as there was anyone, she just come on in the kitchen where I was, Audrey Fern and Josie was back in the living room.

"Q. Now that is Mike's wife? A. Yes.

"Q. And Mike himself was there, wasn't he? A. Yes, he came in later, they didn't come together as I understand it, Audrey brought mother and come in the car and they come in the truck and they parked up the street a piece and Josie, she comes in and commanded it, and says, 'why don't you give it to her,' says 'why don't you give her that paper, it is hers,' I said 'yes, it is hers.'

"Q. You said 'yes, it is hers'? A. Yes, the money was hers and the paper was hers at that time because she was living.

"Q. Now then, I'll ask you there—A. (Interrupting) Then Mike come in.

"Q. Now let me ask you a question, if you don't mind, there in the presence of Audrey Fern and Mrs. Josie Baxter, I'll ask you if Mrs. H. B. Baxter, your mother, didn't ask you to let her have that certificate? A. She did not, she never did ask me.

"Q. And I'll ask you if she didn't sit there and cry because you wouldn't give it to her? A. No, sir, she come nearer crying when she come in, they forced her to come up there and get that paper, if she could, and she sat there and said she had it fixed like she wanted it and she wanted it to stay that way."

It seems a reasonable conclusion to us and we so hold that Mrs. Baxter had the certificates of deposit issued like she wanted them over a period of several years when she was calm and undisturbed. She was not expressing her own will and desire, but that of her sons, when her sons found out that she had made the last certificate to their sister and, "they had a big stir and a big row about it," as Audrey Fern Williams testified.

(3) As we understand, the rule of "independent advice" is never applied in testing the validity of a transaction unless a confidential relationship between the parties to the transaction is pleaded and proved. When so pleaded and proved any transaction between the parties whereby the dominated party suffers a detriment and the dominating party receives a benefit is presumed

to be invalid. Proof that the dominated party had independent advice concerning the transaction between the parties is one method of overcoming the presumption of invalidity.

In the case on trial, neither the pleadings nor the proof would support a finding by the Court that a confidential relationship existed between Mrs. Baxter and Mrs. Nippers with Mrs. Baxter the dominated party and Mrs. Nippers the dominating party. Wherefore, the doctrine of independent advice does not apply. Turner v. Leathers, 191 Tenn. 292, 232 S. W. (2d) 269; Miller v. Proctor, 24 Tenn. App. 439, 145 S. W. (2d) 807; Roberts v. Chase, 25 Tenn. App. 636, 166 S. W. (2d) 641.

(4) Mrs. Nippers contends that the certificate of deposit presents a case of a contract between Mrs. H. B. Baxter and Peoples Bank for the benefit of a third-party beneficiary wherein Mrs. Baxter furnished the consideration to the Bank which supported the promise of the Bank to pay Mrs. Nippers according to the terms of the contract the certificate of deposit as a donee third-party beneficiary.

It is the duty of this Court to review all the facts of a chancery case; and, if all facts support the decree of the Chancery Court, that decree must be affirmed. Fletcher v. Russell, 27 Tenn. App. 44, 177 S. W. (2d) 854.

The parties have correctly construed the certificate of deposit in question in so far as they agree that this certificate of deposit is not a gift inter vivos or causa mortis, nor a testamentary disposition of the proceeds of the deposit. Wherefore, the decree of the Chancery Court cannot be affirmed on either of these theories.

There is considerable variance in the several states concerning the theory upon which such suits are prosecuted and rejected or sustained by the courts. If the suit of Mrs. Nippers can be sustained on any theory of law, it must be on the theory of a donee third-party beneficiary.

■ A certificate of deposit is construed by applying the same rules of construction which are used in the construction of other written instruments. Michie on Banks and Banking, Volume 5B, Section 317; Zollman on Banks and Banking, Volume 6, Section 4011.

■ The intention of the parties controls in construing a written contract. Petty v. Sloan, 197 Tenn. 630, 277 S. W. (2d) 355.

■ Courts must give effect to the language of a written contract where such language is plain and unambiguous. Bailey & Company v. Union Planters Title Guaranty Company, 33 Tenn. App. 439, 232 S. W. (2d) 309.

There is no doubt as to the intention of the parties to the contract represented by the certificate of deposit in question. The language is plain, unambiguous, and susceptible of but one meaning. Mrs. Baxter furnished the money for the deposit. The maturity date of the certificate of deposit was one year from date of the certificate, or May 25, 1955. The certificate was made "payable to the order of herself (Mrs. H. B. Baxter) or payable on her death to Mrs. W. A. Nippers." Mrs. Baxter died prior to the maturity date of the certificate. If the contract is a legal contract, the Courts must enforce it.

■ A donee third-party beneficiary of a certificate of deposit may enforce his rights in a jurisdiction which holds that such contracts are valid. Zollman on Banks and Banking, Volume 6, Section 4,000.

■ Third-party beneficiary contracts are recognized and enforced in Tennessee at the suit of the third-party beneficiary. Associated Indemnity Corporation v. McAlexander, 168 Tenn. 424, 79 S. W. (2d) 556; Bailey & Company v. Union Planters Title Guaranty Company, 33 Tenn. App. 439, 232 S. W. (2d) 309. In the case last cited, this Court said, 33 Tenn. App. 460, 232 S. W. (2d) 318:

"It may be also observed in this connection that it is a settled rule in this jurisdiction that a contract for the benefit of a third party may be enforced by the latter. Title Guaranty & Trust Co. v. Bushnell, 143 Tenn. 681, 228 S. W. 699, 12 A. L. R. 1512; Associated Indemnity Corp. v. McAlexander, 168 Tenn. 424, 79 S. W. (2d) 556; Blair v. Southern Clay Mfg. Co., 173 Tenn. 571, 121 S. W. (2d) 570."

■ We are mindful that the case on trial is a suit between Mrs. Nippers and the other next of kin of Mrs. Baxter and not a suit of Mrs. Nippers against Peoples Bank. There seems to be no difference in the applicable principles of law. If Mrs. Nippers is the valid donee third-party beneficiary of the contract between Mrs. Baxter and the Bank, it follows that the other next of kin would have no interest in the proceeds of that certificate of deposit. We concur in the conclusion of law of the Chancellor that Mrs. Nippers was entitled to recover on the certificate of deposit when Mrs. Baxter died before the certificate of deposit matured.

(5) Did the Chancellor err in holding that Mrs. Nippers was "entitled to the money called for in and by Certificate of Deposit No. A1774, *subject to the just debts of Mrs. H. B. Baxter*"? (Emphasis added.)

1932 Code of Tennessee, Section 9036 provides:

"In a matter of equity, how tried on appeal.— Either party dissatisfied with the judgment or decree of the circuit or chancery court, in a matter of equity tried according to the forms of the chancery court, may appeal to the supreme court, or appeals court and have a reëxamination, in that court, of the whole matter of law and fact appearing in the record."

■■■ This Code Section has been construed to mean that only a party aggrieved could appeal from the decree of a chancery court, and have that decree reviewed. Massengill v. Massengill, 36 Tenn. App. 385, 255 S. W. (2d) 1018.

■■■ In the case on trial, appellants were insisting that the proceeds of the certificate of deposit should become a part of the estate of Mrs. H. B. Baxter and thereby be subject to her debts. Therefore, appellants are not aggrieved by the decree which declares such funds are subject to the debts of the estate of Mrs. Baxter, so they are in no position to complain of that portion of the decree.

Mrs. Nippers was aggrieved by the portion of the decree which makes the proceeds of the certificate of deposit liable for the debts of Mrs. Baxter; but Mrs. Nippers does not complain of the decree. To the contrary, she is agreeable to the decree which declares that her

interest in the fund is subject to all the debts of Mrs. Baxter.

We have considered each assignment of error and find no merit in them. The Chancellor reached the correct conclusions of fact, law, and equity. Let the assignments be overruled and the decree of the Chancery Court in all respects affirmed.

Tax the costs of the appeal against appellants. Let the costs in the Chancery Court stand as decreed by the Chancellor.

Bejach, J., concurs.

Carney, J., dissents.

CARNEY, J. I respectfully dissent from the majority opinion in this case. In my opinion the gift by the deceased, Mrs. Baxter, to her daughter, Mrs. Nippers, of the funds on "Time Deposit" in the Peoples Bank at Alamo was clearly and unequivocally an attempted testamentary disposition of practically all of her worldly goods.

To elaborate a little on the facts, Mrs. Baxter was about 91 years of age at the time she died on May 6, 1955. The $2,000 certificate of deposit represented practically all, if not all, of her assets immediately prior to her death.

The record shows that back as far as 1947 Mrs. Baxter was accustomed to carrying a "Time Deposit" in the Peoples Bank. These deposits seem to have increased gradually from year to year. Back about 1950, one or more of these certificates of deposit were issued in the name of Mrs. W. A. Nippers, the daughter, and Mrs.

H. B. Baxter, the mother, jointly. Unquestionably this money belonged entirely to Mrs. Baxter.

Mrs. Baxter asked the banker if the effect of the certificate being written this way was not to give Mrs. Nippers joint control of her money. Upon being informed that it did Mrs. Baxter insisted that all future certificates be changed and put in her name individually and payable to the order of Mrs. Baxter and payable on death to Mrs. Nippers. This indicates to me that Mrs. Baxter clearly wanted and intended to retain full control of her money up until the time of her death and that she intended for Mrs. Nippers, her daughter, to have control of the money only after the death of Mrs. Baxter.

The majority opinion simply accepts Mrs. Nippers' "concession" that the transaction was not testamentary and does not consider the legality of the certificate of deposit as an attempted testamentary transaction at all.

I readily agree that the "Third Party Beneficiary Rule" as it relates to contracts is recognized in Tennessee. However, I do not think that such doctrine will be allowed by our Courts to short-circuit or avoid the positive statutes of our state relating to the administration of decedent estates and relating to the testamentary disposition of personal property.

The majority opinion apparently proceeds upon the proposition that since the certificate of deposit was in writing and expressly recited that the bank would pay the money to Mrs. Nippers on the death of Mrs. Baxter, that this constituted a contract between the bank and Mrs. Nippers which is enforceable by Mrs. Nippers against the bank. Of course, this is the true application of the third-party beneficiary rule.

However, this litigation is not between the bank and Mrs. Nippers because the bank has already admitted its liability and filed its bill of interpleader and paid the $2,000 in Court in full discharge of its liability under its contract. This present litigation is between those claiming as next of kin and distributees of the estate of Mrs. Baxter on the one hand and Mrs. Nippers on the other.

Even though Mrs. Nippers insists that she is entitled to the proceeds of the deposit by virtue of a contract, and the majority opinion so holds, yet it seems to me that in the broader view she must show that she is entitled to this money by some form of legal gift because admittedly the money formerly belonged to Mrs. Baxter and Mrs. Nippers herself has parted with no consideration for her right to this money. In simple terms, it appears that her mother gave her the money using a certificate of deposit as a medium and the bank as an agent in order to effectuate the gift.

As I understand the law there are three ways in which the owner of personal property can dispose of it by gift:

(1) Gift inter vivos—To make a valid effective gift inter vivos, the owner must convey a present irrevocable interest in the property sought to be given to the donee and the owner must denude himself of all control over the property or interest therein sought to be given to the donee at the time of the gift. Figuers v. Sherrell, 181 Tenn. 87, 178 S. W. (2d) 629, 152 A. L. R. 420.

In the case at bar Mrs. Baxter expressly negated any idea of a gift inter vivos to Mrs. Nippers because she expressly charged the banker that future certificates of deposit should be changed so that Mrs. Baxter would have full control of the funds during her lifetime and

that Mrs. Nippers would have no control until after the death of Mrs. Baxter.

(2) Gifts causa mortis—Gifts of this type are also in a sense inter vivos because a living donor and a living donee are indispensable to a valid donation. However, such gifts vary and are different from ordinary gifts inter vivos because the donor reserves the right of revocation. From 1 Pritchard on Wills and Estates (Phillips' Edition) 1955, Section 474 at page 426 I quote as follows:

"* * * The elements essential to a complete gift are, however, the same, by whatever name the gift may be called; there must be a purpose to give; this purpose must be expressed in words or signs, and it must be executed by the actual delivery of the thing given to the donee or to some person for him. In the case of a gift inter vivos, the moment the gift is thus consummated it becomes absolute and irrevocable. A gift mortis causa differs from a gift inter vivos because it is ambulatory and revocable during the donor's life. In the case of a gift mortis causa, the gift must be executed precisely as required in the case of a gift inter vivos, and possession and title must pass to the donee. But it is subject to be defeated by the happening of any of the conditions subsequent which the law annexes to every donatio mortis causa; 1. The gift must be made under the apprehension of death from some present disease or other impending peril, and it becomes void by recovery from the disease or escape from the peril. 2. It is also revocable at any time by the act of the donor. 3. It becomes void by the death of the donee in the lifetime of the donor. 4. It is subject to the

debts of the donor in case of a deficiency of assets; not because the gift is testamentary or in the nature of a legacy, but because such is the condition annexed to it, and it would otherwise be fraudulent as to creditors."

Mrs. Nippers, of course, makes no claim that she is entitled to the funds as a gift causa mortis because the attempted gift was made as far back as 1950; at a time when Mrs. Baxter was under no apprehension of death from any present disease or impending peril.

(3) Gift by will—By chapter 125 of the Public Acts of 1941 the Legislature of Tennessee changed the common law relating to the execution of wills of personal property by enacting what is known as the Uniform Law of Wills. This law, now T. C. A. Section 32-104, provides that all wills, other than holographs or nuncupative wills, must be published and signed by the testator in the presence of two attesting and subscribing witnesses. Of course, the attempted gift in the instant case does not meet any of these requirements.

If the majority opinion should be upheld by the Supreme Court then it seems that there has come into existence an additional method of testamentary disposition of property; namely, by contract through a third party.

I see no legal difference in the gift to Mrs. Nippers by the present Certificate of Deposit than if the Certificate had gone further and said "payable to the order of Mrs. Baxter and on her death payable to the president of the bank who has agreed to pay the debts and burial expenses of Mrs. Baxter and the remainder, after compensation to himself in the amount of 10% of the amount of Certifi-

cate, he will pay one-third each to Mrs. Baxter's three children, X, Y, and Z.''

The only thing illegal I see about such a contract is that the Legislature of Tennessee by the Uniform Wills Act has provided an exclusive procedure which the owner of personal property must follow in order to dispose of property which such owner died seized and possessed of.

In conclusion, I am of the opinion that Mrs. Baxter had entered into a contract with the bank whereby the $2,000 would remain on deposit in the bank up until the time of Mrs. Baxter's death and that upon the happening of that event the money be paid over directly to Mrs. Nippers, such a contract would have been valid and enforceable as a gift inter vivos by Mrs. Baxter to Mrs. Nippers even though the enjoyment of the gift would be delayed until after the death of Mrs. Baxter.

Or even further, it would seem that a contract between the bank and Mrs. Baxter whereby the bank would receive the money, pay the annual interest to Mrs. Baxter and pay the corpus over to Mrs. Nippers on the death of Mrs. Baxter would also have been valid provided that Mrs. Baxter did not reserve the right to withdraw any portion of the corpus during her lifetime.

The distinguishing determinative difference in the contracts above mentioned and in the certificate of deposit in the instant case is the full and complete control which Mrs. Baxter retained over the proceeds of this particular deposit. She had the right to transfer or give this deposit to anyone of her choosing at any time up until the very split second that death came upon her. I think that this certificate of deposit, a negotiable instrument,

would have been subject to execution by Mrs. Baxter's creditors in her lifetime and that from every standpoint she died the owner of this certificate of deposit. Hence, it was a part of the assets of her estate.

True, some courts of other jurisdictions have upheld deposits payable to a named beneficiary on the death of the principal depositor. However, most of these cases involved deposits made in the joint names of the owner of the funds and a beneficiary with the right of survivorship. See 7 American Jurisprudence, Banks, Sections 430 through 434.

However, in our own case of Ferry v. Bryant et al., 19 Tenn. App. 612, 93 S. W. (2d) 344, 345, our Tennessee Court of Appeals held that where a father placed certain funds on deposit in the bank in the name of certain trustees for the benefit of his daughter and to be delivered to her upon his death, but reserved the right to use said funds and did withdraw said funds during his lifetime, that the gift was uncompleted and invalid. In that case Judge McAmis reannounced the general rule of law which seems applicable to the case at bar and which is quoted as follows:

"(1-3) It is elementary that there can be no gift of personal property inter vivos absent complete and unconditional delivery of the article either directly to the donee or to a trustee to act as agent for the donee. If delivery to a third party is merely for the purpose of delivery to the donee, the gift is not completed until the subject of the gift is actually delivered to the donee, and until that is done the donor may revoke the authority of his agent to make delivery, and resume possession of the article. How-

ever, the rule is that where delivery is unconditionally made to a third person to act as agent or trustee for the donee, such delivery completes the gift. To constitute such a case the circumstances must show a full relinquishment of domination over the property to the trustee for the purpose of the trust, so that the trustee shall not be the agent of the donor, but shall act for the donee. Marshall v. Russell, 93 Tenn. 261, 266, 267, 25 S. W. 1070; Chandler v. Roddy, 163 Tenn. 338, 43 S. W. (2d) 397; Fly v. Woods, 13 Tenn. App. 310.''

I might add that one of the vices of permitting testamentary disposition of property without the formality of a will is clearly illustrated by the circumstances under which the certificate sued on by Mrs. Nippers was renewed. When Mrs. Nippers brought her mother, Mrs. Baxter, to the bank on May 25, 1954 to renew the certificate for the last time, the assistant cashier, Mrs. Cates, testified that she waited on Mrs. Baxter. She did not ask her any questions except if she wanted the renewal certificate made out ''the same way.'' Mrs. Cates testified that she remembered no other conversation with her and that she did not feel competent to say whether Mrs. Baxter was or was not of sound mind.

Upon the oral argument before the Court counsel for Mrs. Nippers insisted that this certificate of deposit was analogous to War Bonds issued during World War II and probably being issued at the present time by the federal government whereby the purchaser of said bonds could have them issued in the name of the purchaser with the right of the purchaser to cash them in at any

time in his lifetime but payable on death of the purchaser to some other named beneficiary.

I recognize the analogy and am of the opinion that such bonds constitute an exception to the laws of Tennessee relating to testamentary gifts and the administration of decedent estates. The answer is that the federal government now is definitely superior to state courts and that our state courts have recognized the right and prerogative of the federal government to issue and sell bonds under its own terms and provisions. Brown v. Vinson, 188 Tenn. 120, 216 S. W. (2d) 748, at page 749.

There may be a time when the Legislature of Tennessee will decide that it is to the public interest that the depositors in banks can legally name a beneficiary to receive said bank account upon the death of the depositor without the requirements of a will and still reserve to the depositor the full right to control, withdraw or assign any portion of said account during his lifetime. However, until the Legislature does so provide, I think that bank accounts, whether checking account or time deposits, over which the depositor retains full control up until the time of his death constitute assets of the estate of the depositor.

Therefore, I would reverse the decision of the Chancellor and decree that the proceeds of the certificate of deposit constituted part of the estate of Mrs. H. B. Baxter who died intestate.