# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

JOHN MARSHALL GEORGE and )
LINDA SOUTHERLAND JONES, )
                      )
       Petitioners/Appellees, )  **Shelby Probate No. B-28694**
                      )
VS. )  **Appeal No. 02A01-9807-PB-00183**
                      )
RUTH EMERSON SPALDING )
WARMATH, Executrix of the Estate )
of BONNIE T. SPALDING, Deceased, )
                      )
       Defendant/Appellant. )

**FILED**

**May 24, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

APPEAL FROM THE PROBATE COURT OF SHELBY COUNTY
AT MEMPHIS, TENNESSEE
THE HONORABLE ROBERT S. BENHAM, JUDGE

**LEONARD E. VAN EATON**
**HERSCHEL L. ROSENBERG**
**VAN EATON & ROSENBERG**
Memphis, Tennessee
Attorneys for Appellant

**BLANCHARD E. TUAL**
Memphis, Tennessee
Attorney for Appellees

**AFFIRMED IN PART & REVERSED IN PART**

                                          **ALAN E. HIGHERS, J.**

**CONCUR:**

**W. FRANK CRAWFORD, P.J., W.S.**

**DAVID R. FARMER, J.**

       This appeal involves a dispute among the beneficiaries of the estate of Bonnie M.

Spalding ("Spalding") over funds from several financial accounts. The subject accounts included a certificate of deposit, a savings account, a checking account, and two money market investment accounts. Prior to Spalding's death, the savings account, the checking account, and the money market accounts had all been maintained as being owned jointly by Spalding and her daughter, Ruth Emerson Spalding Warmath ("Warmath"), with right of survivorship. The certificate of deposit had been maintained as being payable on the death of Spalding to Warmath. Subsequent to Spalding's death and during the course of probate proceedings, her deceased daughter's children (Spalding's grandchildren), John Marshall George ("George") and Lynda Southerland Jones ("Jones"), filed a "Petition to Contest Monies Passing to [Warmath] and to Set Up a Resulting Trust for All Monies Passing to [Warmath] as a Result of Joint Accounts with [Spalding] with Right of Survivorship." Essentially, George and Jones maintained that Spalding intended that all her property be divided after her death such that Warmath would receive one-half, George would receive one-fourth, and Jones would receive one-fourth. George and Jones therefore asserted that one-half of any monies from the subject accounts, which passed directly to Warmath upon Spalding's death, were held by Warmath in a resulting trust for the benefit of George and Jones. The trial court did not find and enforce any such resulting trust as to either the certificate of deposit or the savings account. The trial court did find, however, "that the proceeds of [the checking] account are properly the property of the probate estate and should be distributed in accordance with the terms of the will." Similarly, the trial court found that the money market investment accounts were properly assets of the estate. The trial court therefore ordered Warmath "to immediately transfer the proceeds" from the checking account and the money market accounts to Spalding's estate. Based upon our review of the record, we find that George and Jones failed to present clear and convincing proof to support the establishment of a resulting trust. Therefore, we reverse the trial court's judgment as to the checking account and the money market accounts, and affirm the trial court's denial of relief as to the certificate of deposit and the savings account.

## I. Facts and Procedural History

2

On January 18, 1989, Spalding executed a Last Will and Testament. According to the terms of Spalding's will, if her husband failed to survive her, the assets of her estate are to be distributed one-half to Warmath, and one-half in trust for Spalding's other daughter, Wanda Janice Spalding Southerland ("Southerland"). In the event that Southerland was not living at the time of Spalding's death, then the will provides that Southerland's one-half interest is to pass to George and Jones, Southerland's two children, in equal shares.

On November 7, 1989, Southerland died. On May 25, 1993, Spalding's husband died. At some point during 1993, after the death of Spalding's husband, Spalding arranged to have Warmath's name added to several of her bank accounts. The signature cards to both her Union Planters savings account and her Union Planters checking account were revised to reflect joint ownership between Spalding and Warmath with right of survivorship. On June 4, 1993, Spalding opened a Leader Federal joint account between Spalding and Warmath with right of survivorship. Also, on September 21, 1993, Spalding purchased a Union Planters certificate of deposit that was payable-on-death to Warmath.

In 1996, Spalding's overall physical health declined. On May 14, 1996, Spalding executed a Durable Power of Attorney for Finance, pursuant to which Spalding granted to Warmath full power and authority over all of Spalding's financial affairs. In August or September 1996, Spalding fell and broke her hip, and was admitted to a hospital. On September 16, 1996, Warmath closed the Leader Federal joint account and transferred the funds to two Piper Jaffray money market accounts, which were opened under the same form of ownership, joint between Spalding and Warmath with right of survivorship. Warmath's undisputed testimony explained that Warmath transferred the funds in order for Spalding to benefit from a higher rate of return on the invested funds.

After Spalding's hip injury, Spalding spent the remainder of her life in a nursing home. On December 11, 1996, she died. Thereafter, on January 2, 1997, her will was

admitted to probate and Warmath and Bobby Joe Smith were appointed as co-executors.

As mentioned earlier, George and Jones filed a petition during the probate proceedings of Spalding's estate, contesting Warmath's entitlement to the funds from the subject accounts. To summarize, the disputed funds are from the following accounts:

1.      Union Planters certificate of deposit number 410206, which had an original face amount of $100,000.00, was originally purchased on September 21, 1993, and was captioned "Bonnie M. Spalding P.O.D. Ruth S. Warmath";

2.      Union Planters savings account number 21-7485727, which contained approximately $2,600.00 at the time of Spalding's death, was originally established on July 24, 1973, and was revised at some point after the death of Spalding's husband to reflect ownership as "Bonnie M. Spalding or Ruth Spalding Warmath" as joint tenants with right of survivorship;

3.      Union Planters checking account number 21-2807548, which contained approximately $5,600.00 at the time of Spalding's death, was originally established on March 1, 1962, and was revised at some point after the death of Spalding's husband to reflect joint ownership between Spalding and Warmath with right of survivorship;[1] and

4.      Two Piper Jaffray money market accounts, which contain approximately $150,000.00, were funded by all amounts previously held in the prior Leader Federal joint account, and were established as joint accounts between Spalding and Warmath with right of survivorship.

In George's and Jones's petition, they alleged that Spalding did not intend for Warmath to receive all of the funds that were held in the accounts, but, rather, intended for the funds to pass in accordance with the terms of her will -- one-half to Warmath, one-fourth to George, and one-fourth to Jones. The trial court did not find and enforce a resulting trust as to the certificate of deposit and as to the savings account. It did conclude, however, that the funds from the checking account and the money market

_____

1. This signature card to the Union Planters checking account was later revised again on July 19, 1995 to add Barbara Townsend as an additional joint tenant with right of survivorship. However, based upon our disposition of the subject appeal, we need not address the further ramifications of Townsend's additional ownership interest.

4

accounts are properly property of the probate estate to be distributed under the terms of Spalding's will.[2] The trial court therefore ordered Warmath "to immediately transfer the proceeds" from the checking account and the money market accounts to Spalding's estate. Thereafter, Warmath appealed.

## II. Analysis

### A. The Joint Accounts.

Upon review of this case, we are guided, in part, by Lowry v. Lowry, 541 S.W.2d 128 (Tenn. 1971). In Lowry, the Tennessee Supreme Court set forth the following guiding principles that are pertinent to the joint accounts in this case:

> [A] joint account agreement with rights of survivorship establishes a contract which transfers the account proceeds at death by operation of law. Thus, a will disposing of the estate does so without regard to the assets of the joint survivorship account; that is, only that property owned at death passed by will. 1 Pritchard, Law of Wills and Estates, § 28, (2d ed. Phillips 1955); T.C.A. § 32--301; *Sadow v. Solomon*, 204 Tenn. 190, 319 S.W.2d 83, 85 (1958), and it is clear that joint survivorship funds are not owned by the decedent at death:
>
> > "The right of survivorship may be created in a joint bank account . . . in which event the proceeds pass to the survivor by operation of law and do not become a part of the assets of the estate in the hands of the personal representative of the decedent." 2 Pritchard, *supra*, § 621.
>
> > *Absent clear and convincing evidence of contrary intent expressed at the time of its execution*, we hold that *a bank signature card containing an agreement in clear and unambiguous language that a joint account with rights of survivorship is intended, creates a joint tenancy enforceable according to its terms*; and upon the death of one of the joint tenants, the proceeds pass to the survivor.

Lowry, 541 S.W.2d at 131-32 (emphasis added). The Lowry court further stated:

> The establishment of a joint bank account creating a joint tenancy with right of survivorship in clear and unambiguous language is subject to the parol evidence rule and is generally immune from attack in the absence of fraud, misrepresentation, duress, undue influence, mutual mistake, and incapacity.

Id. at 133.

---

2. We find it relevant to note that the relief granted by the trial court was not entirely consistent with the relief prayed for by George and Jones. George and Jones sought enforcement of a resulting trust for their own direct benefit, whereby Warmath would be directly liable to George and Jones. Instead, the trial court directed payment of the funds to Spalding's estate, which would similarly benefit George and Jones indirectly. However, because the petition filed by George and Jones was filed as a part of the probate proceedings, and because no error has been raised on appeal based upon the *form* of relief granted by the trial court, we will proceed with reviewing whether any relief (in either form) was appropriate in this case.

5

In this case, signature cards or other such agreements containing such clear and unambiguous language that joint accounts between Spalding and Warmath with rights of survivorship were intended, were introduced at trial as to the Union Planters savings account, the Union Planters checking account, and the Piper Jaffray money market accounts. The ownership reflected on both the savings account agreement and the checking account agreement was "joint-with survivorship," and each of these agreements listed both Spalding and Warmath as account owners. Also, both of these documents, which were signed by both Spalding and Warmath, further described a joint account with survivorship by explaining that each of the account owners "intend that upon your death the balance in the account . . . will belong to the survivor(s)." Similarly, the ownership reflected on both Piper Jaffray "Co-Owner" agreements was "Joint Tenants With Right of Survivorship," and each of these agreements listed both Spalding and Warmath as account owners. Also, both of these co-owner agreements further described "joint tenants with right of survivorship" by explaining that if any owner dies, "the entire interest in the joint account shall be vested in the survivor."[3]

Based upon the foregoing, Warmath's right of survivorship as to any funds from the savings account, the checking account, and the money market accounts is enforceable absent clear and convincing evidence of some contrary intent of Spalding at the time when Warmath's name was added to each account. No such clear and convincing evidence was

---

3. It must be noted that the fact that Warmath unilaterally closed the Leader Federal account and transferred all such funds to the Piper Jaffray accounts, which were opened by Warmath in her individual capacity and through the power of attorney that had been executed by Spalding, does not affect our review of Spalding's intent as to the Piper Jaffrey account funds under the unique facts of this case. This is because these same funds were transferred by Warmath directly from the Leader Federal account that was likewise designated as being a "joint account with right of survivorship" between Spalding and Warmath, the named account owners. The account agreement to the earlier Leader Federal account further bore both Spalding's and Warmath's original signatures and described the "joint account with right of survivorship" by explaining that "the Account created . . . is and shall become the property of each joint account owner as joint tenants and that the survivor is entitled to all monies in the account even if the first person to die has a will specifically directing disposition to someone else." Also, the bank officer who opened the Leader Federal account in 1993 testified that she explained the nature of the ownership of the account to Spalding, and that Spalding understood that Warmath had the right to withdraw money without Spalding's permission. Moreover, because this prior Leader Federal account, from which the Piper Jaffrey account funds were taken, was originally opened after January 1, 1989, the designation of "joint account with right of survivorship" would have operated as *conclusive evidence* of Spalding's and Warmath's intentions that title vests in the survivor, had Warmath left the funds in the Leader Federal account. See Tenn. Code Ann. § 45-2-703(e)(1) & (g) (1993). Based upon the above facts and circumstances, any allegation raised by George and Jones as to any breach of Warmath's fiduciary duty to Spalding arising from the power of attorney is without merit. The Leader Federal account funds were jointly owned *prior* to the execution of the power of attorney. Warmath acted entirely within her rights and authority when she closed the Leader Federal account and transferred the funds to the Piper Jaffray accounts.

presented at trial, however. George and Jones primarily relied upon Spalding's will, whereby Spalding effectively divided her estate so that Warmath receives one-half, George receives one-fourth, and Jones receives one-fourth, and upon certain statements made by Spalding expressing an intent that her estate be divided as such between Warmath, George, and Jones. As the Tennessee Supreme Court previously observed under the facts of Lowry, Spalding's will and her oral statements made relating to the division of her estate in this case were "couched in general terms and did not evidence any specific intent on the part of [Spalding] to include the joint accounts in the probate estate." See Lowry, 541 S.W.2d at 132. Warmath's receipt of all proceeds in the joint accounts is not necessarily inconsistent with an expression of intent by Spalding that her estate be divided as set forth in the will, because, under Tennessee law, "joint survivorship funds are not owned by the decedent at death" and "do not become a part of the assets of the estate." Id. at 131. Spalding's estate can still be divided as set forth under her will absent the joint account funds.

At trial, no proof established that any change in ownership of the subject funds or accounts, to joint with right of survivorship, was the product of fraud, misprepresentation, duress, undue influence, mutual mistake, or incapacity. In fact, testimony was introduced that weighed against any such findings. The record is replete with uncontroverted testimony that Spalding was at all times a strong-willed, mentally competent individual, fully capable of handling her affairs and completely able to understand the ramifications of her actions. To apply the Supreme Court's language from Lowry, "In view of [Spalding's] financial awareness, and her transactions [regarding several different accounts], . . . it would be presumptuous to say that she was not familiar with the legal aspects of joint tenancy." Id. at 132-33. Furthermore, testimony from the bank officer who was present at the time Spalding executed the savings account signature card established that the officer explained the nature of a joint account with right of survivorship to Spalding, and that it was Spalding who chose the type of ownership. Moreover, the same officer testified, as to the Union Planters checking account, that the ordinary practice and procedure for Union Planters bank employees who handle such account agreements is to explain to the

7

depositor (Spalding) the rights of available types of ownership. Likewise, the Leader Federal bank officer who handled the agreement to the Leader Federal account (the account from which the Piper Jaffrey money market funds came), testified that Spalding would have chosen the type of ownership and that the rights applicable to such ownership would have been explained to her.

Perhaps the strongest testimony within the record to support George's and Jones's position is that *Warmath* admitted that she originally believed that Spalding added her name to the checking account simply for the convenience -- for Warmath to be able to write checks for Spalding on occassion. This testimony, however, does not establish any mistake on Spalding's part. No proof otherwise established that Spalding did not undertand or appreciate the nature of a joint account with right of survivorship. Therefore, absent such proof, it would, again, be presumptuous to say that there existed some *mutual* mistake.

## B. The payable-on-death account.

As with joint accounts with right of survivorship and in appropriate circumstances, payable-on-death funds are no longer owned by the decedent at death and do not become a part of the assets of the decedent's estate. Tennessee Code Annotated section 45-2-704(b), which governs payable-on-death accounts, sets forth the following:

> (1) Any person, or persons jointly as tenants with right of survivorship, owning a deposit account may enter into a written contract with any bank whereby the balance of the deposit account may be made payable on the death of the last surviving owner to another person or persons, notwithstanding any provisions of law to the contrary.[4]
> (2) In creating such account, "payable-on-death" or "payable on the death of" may be abbreviated to "P.O.D."
> . . . .
> (4) The interest of a death payee shall be deemed not to vest *until* the death of the owner . . . .
> (5) The following terms shall apply to such account, unless the contract provides otherwise:
> (A) *The interest of a death payee in the account vests* only *if the payee survives the last surviving owner*;
> . . . .

---

4. Cf. Peoples Bank v. Baxter, 41 Tenn. App. 710, 298 S.W.2d 732 (1956) (Carney, J., dissenting) (stating "*until the Legislature does so provide*, I think that bank accounts, whether checking account or time deposits, over which the depositor retains full control up until the time of his death constitute assets of the estate of the depositor").

8

(C) If no death payees survives [sic], the account shall remain in the estate of the last surviving owner.

Tenn. Code Ann. § 45-2-704(b) (Supp. 1998) (emphasis added). In this case, the Union Planters certificate of deposit, which was signed by Spalding and was purchased by Spalding *after* execution of her will, was purchased as "Bonnie M. Spalding P.O.D. Ruth S. Warmath." Therefore, the account was payable-on-death to Warmath, the named death payee. Because Warmath survived Spalding, the account vested in Warmath upon Spalding's death, instead of remaining within Spalding's estate. Cf. id. § 45-2-704(b)(5)(A) with id. § 45-2-704(b)(5)(C).

Even absent section 45-2-704(b), Spalding's Union Planters certificate of deposit was a contract between Spalding and the bank, with Warmath listed as a third-party beneficiary. As with other contracts, "[c]ourts must give effect to the language of a written contract where such language is plain and unambiguous," including a plain and unambiguous payable-on-death provision. Peoples Bank v. Baxter, 41 Tenn. App. 710, 298 S.W.2d 732, 738 (1956). If Warmath is the valid donee third-party beneficiary of the contract between Spalding and Union Planters, then "it follows that the other next of kin would have no interest in the proceeds of that certificate of deposit." Id. at 739.

Moreover, as we noted earlier with respect to the joint accounts, no proof established that the P.O.D. designation was the product of fraud, misrepresentation, duress, undue influence, mutual mistake, or incapacity. As we previously stated, the record is replete with uncontroverted testimony that Spalding was *at all times* a strong-willed, mentally competent individual, fully capable of handling her affairs and completely able to understand the ramifications of her actions. Moreover, the Union Planters bank officer who handled the transaction testified that she routinely explained the nature of a payable on death beneficiary designation to customers prior to their establishing their accounts.

## C. Resulting Trusts.

The Tennessee Supreme Court has recognized, "The creation of a resulting trust

9

is not a means to avoid the law with regard to joint tenancies with rights of survivorship as established in <u>Lowry</u> . . . ." <u>In re Estate of Nichols</u>, 856 S.W.2d 397, 402 (Tenn. 1993). Therefore, in accordance with the foregoing review of the joint accounts in this case, imposition of a resulting trust as to any such accounts is improper. Moreover, based upon the foregoing review of the payable-on-death account in this case, we can find no reason to justify any differing result.

### III. Conclusion

Accordingly, the trial court's judgment is hereby reversed as to the funds from the Union Planters checking account and the Piper Jaffray money market accounts, and is hereby affirmed as to the Union Planters savings account and certificate of deposit. Costs on appeal are taxed to George and Jones, for which execution may issue if necessary.


_____
HIGHERS, J.

_____
CONCUR:


_____
CRAWFORD, P.J.,W.S.


_____
FARMER, J.