264

JAMES F. VICTORY, MRS. CORNELIA VICTORY TRAVIS, MRS. VIRGINIA VICTORY SMITH, MRS. ANN VICTORY HIRAMA and CLIFF VICTORY, v. J. W. VICTORY and WILKES COFFEY, JR., Executor of the last Will and Testament of Mrs. Lillie M. Victory. —399 S.W.(2d) 332.

Middle Section, at Nashville. July 30, 1965

Certiorari Denied by Supreme Court November 15, 1965.

Ridley & Bouldin, Murfreesboro, for complainants.

J. J. Jewell, Jr., Wilkes Coffey, Jr., Murfreesboro, for defendants.

# I.

## THE CASE

SHRIVER, J.  Complainants below, James F. Victory, et als., five children of Mrs. Lillie M. Victory deceased, filed the original bill in the Chancery Court of Rutherford County against the defendant J. W. Victory, another son of decedent, and Wilkes Coffey, Jr., as her executor, seeking a declaration that a certificate of 1,000 shares of preferred stock in Tennessee Farmers Cooperative belonged to the estate of decedent and not to the defendant, J. W. Victory, individually.

Under the will of Mrs. Victory her property was divided equally among her children with the exception of a small specific legacy to one of them. However, after her death it was discovered that she had caused her checking account at the bank and her savings account and the stock certificate in question be changed from her name individually, to the name of herself and the defendant J. W. Victory jointly.

The defendant disclaimed the bank account and the savings account and turned them over to the executor, but he asserted ownership of the stock certificate, taking the position in the Court below that the shares represented thereby were the subject of a valid gift inter vivos from his mother to himself.

The cause was heard before Honorable John D. Templeton, Chancellor, who held there was no valid gift inter vivos but that the stock, nevertheless, belonged to the defendant as a third party donee beneficiary of a contract between the issuing corporation and Mrs. Victory, the original owner.

From this decree the complainants below appealed and have assigned errors.

Defendant below J. W. Victory has also assigned error on the part of the Chancellor in failing to hold that the shares in question constituted a valid gift inter vivos.

## II

## MOTION TO DISMISS

On the date of the oral argument in this case the appellee, J. W. Victory, filed a motion to dismiss the appeal and affirm the judgment below on the ground that the executor of Mrs. Victory having assumed the duty of asserting ownership of the stock certificate in controversy, he alone had the right to maintain a suit for that purpose.

Thereupon, Wilkes Coffey, Jr., Executor, filed a motion to be substituted as appellant in this cause or, in the alternative, to be added as one of the appellants.

The attorneys for the respective parties have filed briefs and arguments on this question.

It is to be noted, in the first place, that this is not a possessory action but is a bill for a declaratory judgment, and, under Section 23-1105 T.C.A., any person interested as devisee, legatee, heir or next of kin in the estate of a decedent may have a declaration of rights or legal relations in respect thereto for the purpose of directing the personal representative to do a particular act in his fiduciary capacity or to determine any question arising in the administration of the estate, and, distributees and legatees have a right to obtain a declaratory judgment as to distribution of an estate by making the personal representative a party. Sadler v. Mitchell, 162 Tenn. 363,

36 S.W.(2d) 891; Cummings v. Shipp, 156 Tenn. 595, 3 S.W.(2d) 1062.

The motion to dismiss the appeal and affirm the judgment below is denied. The motion of the executor to be allowed to become a party appellant is granted.

## III

## THE FACTS

The dispute herein arose after the death of Mrs. Victory when it was discovered that she had caused her checking account in the bank and her savings account and a certificate of 1,000 shares of preferred stock in Tennessee Farmers Cooperative at Lavergne, Tennessee, worth about $10,000.00, to be changed from her name to that of herself and/or her son, J. W. Victory.

As hereinabove stated, the son disclaimed the bank accounts, although they were made out as joint and survivor accounts, but he insisted on ownership of the certificate.

The bill was filed against the son, J. W. Victory, and the Executor by six of Mrs. Victory's eight children. The main tenor of the bill is that the son procured the re-issuance of this stock with his name on it by fraud and undue influence and at a time when a confidential relationship existed between him and his mother, so that the transaction was void, and that, in any event, there was no valid gift inter vivos.

The defendant denies any undue influence and relies on the gift as being good.

The Chancellor pointed out that if these issues were the only ones involved the defendant would be cast, because, although there was no fraud, there was no valid

gift inter vivos. The Chancellor's opinion then goes on to state that, with great deference to the parties, it is believed that the cause turns on another and different principle, to wit, that the transaction was a contract for the benefit of the defendant under which he became the owner of the stock when his mother died.

The opinion then sets out a resume of the proof which we adopt as follows:

"For many years prior to 1958 the defendant, J. W. Victory, was in equal partnership with his father, J. J. Victory, in the construction business. In 1958 the partners made an agreement that in event of a partner's death the survivor would buy the deceased partner's share of the business from his estate for $10,000.00. To assure the performance of the agreement, life insurance was taken out in the amount of $10,000.00 on the life of each partner payable to the survivor. The written agreement is unique in that it appears to take no account of what a partner's interest might be worth at his death. Mrs. Victory has the moving spirit in the making of the contract.

After the agreement was made Mr. and Mrs. Victory became estranged on account of the alleged scandalous conduct of Mr. Victory. The defendant confirmed to his mother the father's misconduct while the other children discounted or denied the report. Partly because of this Mrs. Victory became much provoked and even bitter toward her other children and more attached to the defendant. Theretofore, she had been critical of the defendant about the conduct of the partnership business and especially disliked his wife.

In 1959 the father died suddenly. The defendant collected the $10,000.00 life insurance and used it to

purchase the interest of his father in the business. He lived up to the agreement and took no account of what the interest of the deceased partner was worth or how much the worth of it had been diminished by excess withdrawals. Mrs. Victory was the object of Mr. Victory's bounty and came into possession of about $20,-000.00 in cash, the home place, and perhaps other property when the estate was wound up in 1960. Even after her husband's death she remained hostile for some time toward all of her children except the defendant but she later became reconciled with at least some of them.

Mr. Coffey, the Executor of her will, was her lawyer and she consulted him regularly. He testified in this case for the complainants and for himself as Executor of Mrs. Victory's will.

Mr. Coffey advised Mrs. Victory to make her checking account joint with one of her children so that in her absence or if she became disabled and was unable to attend to business the son or daughter selected could pay her bills and take care of her business for her. He did not advise her to make any such change in her savings account or other property. This was in 1960.

On December 1, 1960, Mrs. Victory opened a savings account of $10,000.00 in her name at Murfreesboro Federal Savings & Loan Association. On January 13, 1961 she invested another $10,000.00 in a certificate for 1,000 shares of preferred stock in Tennessee Farmers Cooperative and had it issued in her name. Mr. Coffey had advised against investment in cooperative stock and the defendant had advised in favor of it.

About June 12, 1961 Mrs. Victory and the defendant signed a 'joint account' card making her savings ac-

count at Murfreesboro Federal Savings & Loan Association joint with right of survivorship. The agreement on this card is unequivocal in conferring joint control and providing for ownership by the survivor. The defendant said that his mother never told him that she either did or did not intend for him to have any interest in this account or own it at her death. He said she tendered him the card for his signature without any explanation and he signed it only because she asked him to. He never asserted any claim to the account or any interest in it during his mother's life and when she died he turned this over to the Executor as well.

In July of 1963 Mrs. Victory procured the stock certificate from her lockbox at the bank and took it to her home. Under date of July 25, 1963 while in her home and in the presence of the defendant and his wife, Mrs. Victory signed her name at the foot of the printed assignment form on the back of the certificate. At her request the defendant witnessed her signature by signing in the place provided for a witness to sign. The blanks in the assignment form never were filled out and neither it nor any other writing ever was made evidencing any agreement between the parties about how the stock was to be held; neither does the endorsement comply with the statute of wills. About July 25, 1963 Mrs. Victory took the certificate to the office of the corporation at Lavergne and surrendered it and caused to be issued in its place a new certificate made out to Mrs. Lillie Mae Victory and/or J. W. Victory. The certificate was issued by the corporation as directed and mailed to the parties at Mrs. Victory's address as shown on the face of it. She lived at the address shown and the defendant lived elsewhere. Mrs.

Victory kept the certificate in her lockbox, collected all the dividends, and exercised exclusive dominion and control over the stock until she died. The Defendant did not see the certificate until it came into the hands of the Executor. He had no access to the box in which it was kept.

When Mrs. Victory endorsed the old certificate in the presence of her son and his wife and requested her son to sign as a witness she told him that she intended to fix the stock so it would be his. After the stock had been reissued she told him she had fixed it so it would be his. The defendant understood that what she meant was that it would be his at her death and he did not intend to claim it during her lifetime.

About a week after Mrs. Victory died in June of 1964 the will was probated and her lockbox inventoried. Just before the box was opened the defendant told the Executor he probably would find the stock had his name on it. When the box was opened the Executor did not remark upon how the certificate was made out because he thought it might cause a disturbance among the children, some of whom were present with the defendant. He found also that the bank account and savings account were made out as heretofore outlined. He then agreed to meet the children at the Victory home to advise them about the estate. On the way there he rode in a car with the defendant and prevailed on him mightily to renounce any interest in the property and he agreed to disclaim the accounts but he steadfastly declined to disclaim the cooperative stock. He insisted that his mother never told him he could have the accounts but she told him that she intended for him to have the stock and had fixed it so that it would be his.

The bank account amounted to about $400.00 and the savings account to about $8,000.00 and later he in fact turned these over to the Executor. When Mr. Coffey explained these facts to the family gathering and advised them he thought the defendant could retain the property and it was ascertained that the defendant would not relinquish the stock there was quite a disturbance. As the defendant said, that was when the lid blew off. This was the first time any of the other children, except possibly Tom, had heard about how the stock and accounts were made out. None of them knew about it before the mother died.''

■ In appraising the proof the Chancellor states that it is clear that the charge of fraud and undue influence must fail. With this conclusion we agree.

He also stated that there is no presumption of fraud or undue influence that would vitiate the transaction as contended by the complainants under the rule that such presumption exists where the parties stand in a confidential relationship, citing Nicholas v. Wright, 42 Tenn. App. 241, 301 S.W.(2d) 540. The Chancellor goes on to say, ''In any event the defendant has met and overcome any presumption of fraud or undue influence if there was one.'' With this we also agree.

Responding to the charge that the reissuance of the stock was done with no intent on the part of Mrs. Victory to give the defendant any rights of ownership in it, the Chancellor found that the elementary rules applicable to gifts inter vivos of other tangible personalty are also applicable to gifts of corporate stock and that, in order for the gift to be valid there must be an intention on the part of the donor to pass a present interest in the subject

matter and a delivery of it, either actual or constructive to the donee.

The Chancellor then discusses several cases including Chandler v. Roddy, 163 Tenn. 338, 43 S.W.(2d) 397, where stock certificates were found in the donor's lockbox after he died and his daughter claimed them by gift. However, he had retained control over a majority of the securities and his oral gift to his daughter was ineffective for want of delivery, while the stock that he had endorsed to her and left in the box was deemed to have been delivered on account of his habits, etc.

In Figuers v. Sherrell, 181 Tenn. 87, 178 S.W.(2d) 629, 152 A.L.R. 420, where the donor had shares of stock transferred to his nephew on the books of the corporation but retained control of them, it was held that there was no intent to transfer a present interest to the nephew and no delivery to him, hence, the gift was incomplete.

In American National Bank v. Robinson, 27 Tenn.App. 644, 184 S.W.(2d) 393, it was held that the mere possession of a stock certificate by a donee which was in the name of the donor would not avail to pass title but it was up to the donee to prove there had been a valid gift.

In Collins v. Alexander, 37 Tenn.App. 129, 260 S.W. (2d) 414, it was seen that the donor endorsed the certificates of stock to the donee and wrote on an envelope containing them that they were to be given to the donee at his death but the donor retained control of them. When the donee undertook to claim the stock at the donor's death it was held there was no valid gift because there was no delivery and none was intended.

The Chancellor held that, in the case at bar, J. W. Victory was not in position to claim more than a right of

survivorship in this stock when the bill was filed, control having remained in his mother and that the intention to grant a present interest in the subject matter was absent and, therefore, there was not a valid gift inter vivos of this stock.

It is argued by counsel for the defendant that the intention to deliver must be presumed from the endorsement of the old certificate by Mrs. Victory in the presence of her son, and the subsequent reissuing of the new one in their joint names, which was procured by Mrs. Victory, this making the defendant legally a co-owner of the certificate. The possession of one co-owner is said to be possession of the other in cases of this kind so that when the mother assumed control of the new certificate there was a delivery of the gift to her son as well.

■ We agree, however, with the Chancellor that the defendant had said that Mrs. Victory had intended for his right in the stock to be put off until her death, which is inconsistent with a delivery under the statute and decisions.

The Chancellor held, however, that the defendant is entitled to the stock on the theory that there was a contract between his mother and the corporation that created in him a right of survivorship in this stock as a third party donee beneficiary on the authority of that line of cases beginning with Peoples Bank v. Baxter, 41 Tenn. App. 710, 298 S.W.(2d) 732. It was the holding in that case that one who had a mere right of survivorship in a certificate of deposit revocable at the will of the owner was entitled to it when the owner died because the certificate was a contract between the owner and the bank for the use and benefit of the survivor as a third party donee beneficiary.

The Chancellor concluded that the rule announced is one of contract and that no reason could be thought of that would render it inapplicable to other contracts. He pointed out that a certificate of stock is as much a contract as a certificate of deposit and it has been said that, besides acting as a muniment of title, a certificate of stock serves the additional purpose of expressing the contract which exists between the holder and the corporation as well as all other holders of stock therein. Citing 13 Am.Jur. Corporations, Sec. 319.

While the certificate does not contain the words of survivorship in express terms, it contains words that are capable of meaning more than one thing. *The certificate is made out to Mrs. Lillie Mae Victory and/or J. W. Victory.*

██ As indicated in Interstate Life & Accident Insurance Co. v. Gann, 196 Tenn. 422, 268 S.W.(2d) 336, 44 A.L.R.2d 1230, when "and/or" is used in a contract, the Court may select the word that fits.

It is said that regardless of how the Courts and legal writers feel about the term "and/or" it is fairly clear that where the term is used in a contract, the intention is that the one word or the other may be taken accordingly as the one or the other will best effect the purpose of the parties as gathered from the contract taken as a whole, and that the practical construction placed by the parties on the term and the circumstances surrounding the execution of the agreement, may be of aid in determining what interpretation will best accord with the equities of the case. 17 Am.Jur.2nd, Contracts, Sec. 283.

The Chancellor found that the corporation regarded both parties as having an interest in the certificate from the time it was issued with the right of either the mother

or the son to act concerning it and with the right of survivorship. This is deduced from the fact that mail respecting the stock was addressed to both parties and dividend checks made out to both. The company honored a dividend check that Mrs. Victory cashed by her endorsement alone and one that the son cashed with his signature alone after his mother died. The Chancellor then states ''It is a matter of common knowledge that survivorship is one of the attributes laymen suppose the term 'and/or' to imply.''

The bill alleges that the defendant knew the mother did not intend for him to own the savings account of $8,000.00 and, therefore, he surrendered it to the executor and that she did not intend to give him any present or future rights of ownership in the stock but had it reissued as she did solely for the purpose of making it available to be used at any time in the event she needed to convert it into cash.

Referring to this contention, the Chancellor states;

''That the stock certificate worth $10,000.00 and the savings account worth another $10,000.00 were changed for convenience really sounds absurd when it is reflected upon. Mrs. Victory had not been advised to change either by Mr. Coffey, only her checking account. She still had money in her checking account when she died. The fact that the son surrendered the savings account to the estate demonstrates hardly anything except that he perferred to yield as requested or perhaps was possessed of a magnanimous nature. If he had chosen to claim the savings account probably nothing could have controverted the terms of that card he and his mother signed. Melhorn v. Melhorn, 208 Tenn. 678, 348 S.W.(2d) 319. Of the disinterested witnesses who testified about what Mrs. Victory said reflecting upon

her intention, his witnesses were more numerous and more convincing. It would be necessary, also, to discount what he and his wife related about how the first certificate was endorsed by Mrs. Victory in their presence and what was said and what she did and said to them thereafter. Their testimony no doubt is true.''

■ The Chancellor finds that Mrs. Victory did not intend for her son to have a beneficial interest in the certificate as a tenant in common during her life but that she did intend for her son to own the stock at her death. He says, ''This is made out by clear, cogent and irrefragable proof'' and we concur in this statement.

The Chancellor's opinion concludes:

''So, on the question of survivorship she and the corporation were together and the certificate made out as it was to 'Mrs. Lillie Mae Victory and/or J. W. Victory' in the light of the surrounding facts and circumstances and the intention of both parties constituted a contract for the use and benefit of the defendant. When Mrs. Victory died with this contract still in effect the stock became the property of the third party donee beneficiary. It never became a part of the estate.''

With these conclusions we agree.

It results that the assignments of error of both parties are overruled and the judgment of the trial Court is in all things affirmed.

Affirmed.

Humphreys and Puryear, JJ., concur.