Jere C. GORDON, Co-Executor, Mrs. Lessie T. Gordon, Mrs. Helen T. Gallella and Ransom Thornton, Plaintiffs-Appellants,

v.

Vance THORNTON, Co-Executor, Defendant-Appellee.

Court of Appeals of Tennessee, Western Section.

Feb. 9, 1979.

Certiorari Denied by Supreme Court May 7, 1979.

Thomas E. Harwood, Trenton, for plaintiffs-appellants.

Malone & Holmes, Trenton, for defendant-appellee.

MATHERNE, Judge.

Having accounted for all other properties of the testator, Eva T. Fonville, the co-executors of that estate differ on the proper distribution of 32 shares of the common stock of the Citizens State Bank, Trenton, Tennessee, and 7 shares of the common stock of the Merchants Bank, Dyer, Tennessee. The defendant co-executor, Vance Thornton, claims the shares of stock as surviving donee third party beneficiary by virtue of the fact that the stock certificates were issued to "Mrs. Eva Fonville or Vance C. Thornton." The plaintiff co-executor,

Jere Gordon, claims that the shares of stock are a part of the estate of the testator and must be divided as set out in the residuary clause of the will.

The judge of the Probate Court of Gibson County, Tennessee, held that the shares of stock would be distributed according to the terms of the will. The defendant co-executor appealed that decision to the Chancery Court sitting in Gibson County, Tennessee. The Chancery Court held that the shares of stock passed to the defendant co-executor as the surviving donee third party beneficiary under contracts between the banks and the testator providing for the issuance of the stock certificates in the names of "Eva Fonville or Vance Thornton." The plaintiff co-executor appeals that ruling to this court.

### I.

Eva T. Fonville died testate on May 10, 1969, and her will dated October 23, 1963, was admitted to probate on May 13, 1969. The plaintiff, Jere Gordon, an attorney and nephew of the testator, and Vance Thornton, a brother and employee of Citizens State Bank, qualified as co-executors of the estate as provided in the will. The will provided that the residual estate be equally divided between the testator's two brothers and two sisters, one brother being Vance Thornton and one sister being the mother of Jere Gordon. Immediately following their appointment, the co-executors came into disagreement over the assets of the estate. The parties agree that all matters have been settled except the distribution of the shares of stock herein referred to.

Each bank had, many years ago, issued the stock certificates in the name of Eva Fonville. On March 9, 1968, the Farmers & Merchants Bank, Dyer, Tennessee, issued its Certificate No. 375 for seven shares of its common stock to "Mrs. Eva Fonville or Vance C. Thornton." Vance Thornton testified that this certificate was issued in replacement of the original certificate issued to Eva Fonville. He stated that he went to the bank with Eva Fonville and that the officials of the bank reissued the certificate as Eva Fonville desired.

The original stock certificates from the Citizens State Bank, Trenton, Tennessee, were also issued in the name of Eva Fonville. On September 15, 1967, the bank issued its stock Certificate No. 33 for six shares of its stock and Certificate No. 32 for twenty-six shares of its stock to "Eva L. Fonville or Vance Thornton." Vance Thornton testified that these certificates were issued in replacement of certificates originally in the name of Eva L. Fonville. He stated that the bank officials reissued the stock certificates as desired by Eva Fonville.

Vance Thornton testified that Eva Fonville told him that she wanted to draw the dividends on the stock for her lifetime and that at her death she wanted him to own the stock. He stated that as a result of this statement by Eva Fonville, he took her to the two banks and the stock was reissued as herein noted. The record establishes that Eva Fonville received no independent advice from anyone at either bank and she was not represented by an attorney. The record also establishes, and Vance Thornton admitted, that he attended to all of the business of Eva Fonville for many years prior to her death. The only exceptions to Vance Thornton's sole management of Eva's affairs were instances where Jere Gordon made out her income tax returns based upon information given him by Vance Thornton and an instance where Gordon wrote a deed, a trust deed, and a note growing out of a sale of some land which Eva Fonville effected a few months before her death. Eva Fonville was 65 years of age when she died, and she had been in poor or frail health for many months prior to her death.

The only witness who stated that Eva Fonville wanted Vance Thornton to have the bank stock was the wife of Vance Thornton. This witness stated that Eva told her, at a time long before the recorded transfer of the stock certificates, that she had given Vance the bank stock so that it would eventually belong to the child of Vance Thornton. This witness did not tes-

tify before the probate court. We note her obvious interest in the litigation and the fact that she placed the date of the gift to Vance Thornton long before the transfer of the stock.

It is of importance to note, and the chancellor held, that the reissued certificates of stock were in the possession of Vance Thornton. All dividends declared were paid by check payable to "Eva Fonville or Vance Thornton" from the time the stock was reissued until the death of Eva Fonville. We conclude from the record that Vance Thornton endorsed these dividend checks after the stock had been reissued. There is no showing of where the money went, but we assume it was placed in the account of Eva Fonville.

On the issue of the ownership of the shares of stock, the chancellor stated the position of the parties and his conclusion as follows:

The present stock certificates which were in defendant's possession represent the original stocks together with the increases due to stock splits and stock dividends. These were issued and carried on the stock books in the names of "Eva Fonville or Vance Thornton."

The plaintiff insists that the case should be determined by the law applicable to gifts inter vivos. He takes the position that the stocks were originally the property of Eva Fonville; that defendant was confidante and fiduciary to Eva Fonville; that the transfer of the stock to him creates a presumption of fraud or undue influence; that the burden is upon the defendant to refute this presumption and that he has failed to do so by preponderance of the proof.

The defendant predicates ownership of the stock upon the hypothesis that he is the third-party beneficiary of contracts between Eva Fonville and the respective banks.

The stock certificates speak for themselves.

There is no direct evidence of any fraudulent action or any undue influence asserted by defendant in respect to the transfers nor is there any fact or circumstance surrounding the transfers which is suggestive of fraud. On the contrary, the proof as a whole tends to negate such an inference. To prevail, the plaintiff must rely upon a presumption of law which is not sustained under the clearly shown facts since the transaction was one of contract and no gift inter vivos is involved.

The chancellor relied upon the case of *Victory v. Victory* (1965) 55 Tenn.App. 264, 399 S.W.2d 332. There, a mother had caused her checking account, her savings account, and a certificate of 1,000 shares of preferred stock in Tennessee Farmers Cooperative to be changed from her name to that of herself and/or her son, J. W. Victory. After the mother's death the son disclaimed any interest in the bank accounts, but he did claim ownership of the certificate of stock. The son testified that his mother told him that she had arranged for the stock to be his upon her death. The mother retained possession of the stock certificate during her lifetime. The court held that J. W. Victory could only claim as survivor because control over the certificate remained with the mother and the intention to grant a present interest in the certificate was absent and, therefore, there was not a valid gift *inter vivos* of the stock. The court held, however, that there was a contract between the mother and the corporation that created in the son a right of survivorship in the stock as a third party donee beneficiary on the authority of *Peoples Bank v. Baxter* (1956) 41 Tenn.App. 710, 298 S.W.2d 732.

There are obvious differences in the factual situation in *Victory* and the case at bar. But, assuming that Vance Thornton can claim only as a third party donee beneficiary to contracts between Eva Fonville and the two banks, we must examine closely the chancellor's ruling that the presumption of law relied upon by the plaintiff can not be sustained because the transaction was one of contract and no gift *inter vivos* is involved.

■ All parties, including Vance Thornton, admit that Vance Thornton stood in a fiduciary capacity to Eva Fonville for many years prior to her death. "It is well established that when two parties enter into a confidential or fiduciary relationship and the dominant party receives a gift or other benefit from the other party a presumption arises that some improper advantage was taken '. . . either of the confidential relation existing . . . or of the weakness and frailty of the party from whom the benefit was received, . . .' thus rendering the transaction invalid." *Richmond v. Christian* (Tenn.1977) 555 S.W.2d 105. It is also established that the presumption of invalidity extends to all dealings between persons in fiduciary and confidential relations, and embraces gifts, contracts, sales, releases, mortgages and other transactions by which the dominant party obtains a benefit from the other party. *Williams v. Jones* (1963) 54 Tenn.App. 189, 388 S.W.2d 665; *Roberts v. Chase* (1942) 25 Tenn.App. 636, 166 S.W.2d 641.

■ We overrule the chancellor's holding that the presumption of invalidity does not arise in this lawsuit because the transaction was one of contract and not a gift *inter vivos*. A donee third party beneficiary as defined at Restatement, Contracts, §§ 133–147 (1932), involves making a gift to the beneficiary or conferring upon him a right against the promisor to some performance neither due nor supposed or asserted to be due from the promisee to the beneficiary. The facts of this lawsuit establish the donee third party beneficiary (the dominant party) as the recipient of a gift just as if the gift had been made directly to him by the dominated party. It would be highly inequitable to rule that the dominant party could avoid the presumption of invalidity by personally escorting the other party to a third person for the purpose of that party contracting with the third person in such manner as to pass the benefit to the dominant party. We hold that the presumption of invalidity does exist in this lawsuit.

■ We must now determine if the presumption of invalidity has been overcome. The burden rests upon the fiduciary to overcome the presumption. *Roberts v. Chase, supra.* The presumption of invalidity can be overcome only by clear and convincing proof of fairness in the transaction. *Richmond v. Christian, supra.* One means of overcoming the presumption is by proof that the donor received independent advice, but proof of independent advice is not necessary in all cases. *Richmond v. Christian, supra.* In our determination of this issue, we will consider the totality of the evidence with respect to the dealings and statements of Vance Thornton, both before and after the transactions complained of, as that evidence may relate to the removal of the presumption of invalidity.

After the complaint in this lawsuit was filed in the probate court and before the hearing in that court, Vance Thornton submitted to the residuary devisees a copy of an instrument titled Final Report and Settlement of Vance Thornton, Co-Executor. This instrument reveals the following assets, disbursements, net estate and proposed distribution of the net estate:

| Receipts | | |
|---|---|---|
| Balance in Citizens State Bank | | $ 3,143.89 |
| Savings Account | | 6,698.50 |
| Certificate of Deposit | | 16,290.30 |
| Total | | $26,132.69 |
| Disbursements | | |
| [a listing of disbursements which total $3,183.54] | | (3,183.54) |
| Distribution to Beneficiaries | | |
| To Vance C. Thornton | $11,463.11 | |
| To Ransom Thornton | 3,828.68 | |
| To Helen T. Gallella | 3,828.68 | |
| To Lessie T. Gordon | 3,828.68 | |
| Total | $22,949.15 | $22,949.15 |

It is to be noted that Vance Thornton did not include the bank stock in this accounting; he was claiming it as his property. We note that the checking account in Citizens State Bank was only $39.65 short of being enough to pay all the listed disbursements. The checking account, savings account and the certificates of deposit which originally had been in Eva's name alone had been changed to the joint names of Eva Fonville and Vance Thornton. Under this accounting Vance Thornton was obviously claiming one-half of all those amounts because the proposed payment to

him of $11,463.11 came within $11.46 of being one-half of the net estate of $22,949.15. The three other devisees refused to accept from Vance Thornton checks drawn in the amounts shown for distribution to them as set out in this accounting.

On May 4, 1971, before the hearing in the probate court, Vance Thornton submitted to the residuary devisees another proposed final accounting which was accepted by them insofar as the assets therein stated were concerned. This accounting states the same figures for total assets, disbursements and net estate as did the prior accounting. This last accounting, however, proposed to distribute the $22,949.15 equally among the four devisees with each, including Vance Thornton, receiving $5,737.29.

Vance Thornton testified that Eva Fonville placed the checking account, savings account and certificates of deposit in their joint names so that he could handle her affairs should she become disabled. He testified that she did not intend for him to have those amounts and he claimed only his share thereof. He failed to explain his claim to one-half of those amounts as reflected by his first proposed final accounting as co-executor.

Jere Gordon testified that Vance Thornton told him that Eva Fonville had placed the stock certificates in his, Thornton's, name to prevent Ernest Fonville from getting it. Ernest Fonville was the deceased husband of Eva Fonville and he had been dead many years before this statement was made by Vance Thornton. Vance Thornton testified, but he was not questioned concerning the statement. However, he did not deny making the statement.

From the entire record we conclude that Vance Thornton thrashed about from position to position in an effort to claim as much of the estate of Eva Fonville as he thought he could get by with. If the chancellor held that the presumption of invalidity in the transfer of the bank stock was overcome, we hold that the evidence preponderates against that finding. We can not find that clear, cogent and convincing evidence that would overcome the presumption of invalidity. To the contrary, the testimony and positions taken by Vance Thornton in regard to all his dealings with the estate of Eva Fonville place the preponderance of the evidence in favor of the presumption of invalidity.

The decree of the chancellor is reversed. The judgment of the probate court is affirmed and this cause is remanded to the Probate Court of Gibson County, Tennessee, for the enforcement of its judgment that the shares of bank stock herein involved or the proceeds thereof be distributed equally among the four residuary devisees named in the last will and testament of Eva Fonville, deceased. The costs in the Chancery Court and in this Court are adjudged against Vance Thornton, individually, and execution may issue therefor if necessary. The cost in the probate court will be there adjudged.

SUMMERS and EWELL, JJ., concur.