**Jack D. HOGAN, Administrator of the Estate of Evelyn Hogan Sisk, Deceased, Appellant,**

v.

**John Junior COOPER, Executor of the Estate of Mark Sisk, Deceased, Appellee.**

Supreme Court of Tennessee, at Knoxville.

Aug. 3, 1981.

Fred L. Myers, James C. McSween, Jr., Newport, for appellant.

Ben W. Hooper, II, Newport, for appellee.

OPINION

FONES, Justice.

In this suit to set aside a transfer of assets, we granted a T.R.A.P. 11 appeal to examine the question of whether the Court of Appeals was correct in finding that the presumption of invalidity arising out of a

confidential or fiduciary relationship between assignor, decedent's widow, and assignee, decedent's executor, was not rebutted by clear and convincing evidence of fairness surrounding the transfer of assets. The assets in question, consisting of bonds, savings accounts and certificates of deposit, passed to decedent's widow, as surviving tenant by the entireties, by operation of law but decedent considered those assets to be his individual property and his will contained a directive that his executor treat those assets as part of his estate. Under the circumstances hereinafter recited decedent's widow transferred those assets to the estate, which obviously was the only way that decedent's directive could be accomplished.

We find the evidence in rebuttal of the presumption of invalidity to be clear and convincing and reverse the judgment of the Court of Appeals.

The Chancellor filed an excellent memorandum opinion containing full and accurate findings of fact and disposed of several issues that are no longer viable. On the issue before us, he found that no confidential relationship existed between John Junior Cooper, the executor of decedent's estate and Evelyn Sisk, decedent's widow. The Court of Appeals was of the opinion that a confidential relationship existed, relying upon the factual analogy to *Turner v. Leathers*, 191 Tenn. 292, 232 S.W.2d 269 (1950), and *Richmond v. Christian*, 555 S.W.2d 105 (Tenn.1977). We agree with the Court of Appeals that a confidential relationship existed between Cooper and Evelyn Sisk, under all the circumstances of the relationship that pre-existed his assumption of the duties of executor as well as the implication of that relationship.

The equally excellent opinion of the Court of Appeals, authored by Judge Goddard, does not disagree with any of the facts found by the chancellor, and while acknowledging the issue to be "really quite close" found that the proof did not meet the standard of clear and convincing evidence of fairness.

We quote the following facts and relevant findings from the memorandum opinion of Chancellor Rainwater:

"Mark Sisk and Evelyn Sisk were husband and wife and resided together as such for many decades at their place of residence in Newport, Tennessee. There were no children of the marriage. During their many years of marriage they acquired considerable real and personal property, taking title thereto in their joint names, and including their residential property in Newport, Tennessee, purchased in 1916. By reason of the law existing in 1916, even though title was taken in both names, they actually were owners thereof as tenants in common. Mark Sisk had been gainfully employed during his productive lifetime, and it was from his earnings, together with the faithful assistance and devotion of his wife, that they accumulated this property.

During the year 1969, and due to their failing health, Mark Sisk and his wife, Evelyn Sisk, became residents at the Jefferson County Nursing Home located in Dandridge, Tennessee, and continued to reside there until their respective deaths. During this time, and at their request, the Defendant, John Junior Cooper, a nephew of Mark Sisk, looked after and handled all business matters for them, receiving their income and paying therefrom their necessary expenses.

Mark Sisk died testate on October 17, 1971, survived by his wife. By his Last Will and Testament he made a cash bequest of $8,398.49 to his wife, in lieu of homestead, dower, year's support, etc., and provided that the Executor would pay from his estate 'a monthly sum sufficient to provide and care for her in the manner to which she has been accustomed during our married life, which monthly sum shall be and become her property ....'. The balance of the estate was devised to certain of his relatives.

Said Will further provided:

## IV

'I own and hold a number of Government Bonds, savings accounts and certificates of deposit in various banks which were all purchased by me with monies which I individually earned and which was wholly mine. While these bonds and certificates of deposit are for the most part made payable to Mr. or Mrs. Mark Sisk or to Mark and Evelyn H. Sisk, they are my sole and individual property, and I direct my executor hereinafter named to reduce these bonds and certificates of deposit to cash upon my death, and distribute the proceeds thereof as in this Will provided, subject to the payment of all State and Federal Inheritance Taxes.'

The Defendant, John J. Cooper, the person named as Executor in said Will, duly qualified as such and entered upon his duties. The listed assets of said estate consisted of the residence owned by the parties as tenants in common, and personal property consisting of United States Series E Bonds in the approximate sum of $38,000.00, and bank accounts in the approximate sum of $50,000.00, all of which being held in the name of 'Mark Sisk or Evelyn Sisk' or 'Mark Sisk and wife, Evelyn Sisk'.

Evelyn Sisk continued to be a patient at the Jefferson County Nursing Home following the death of her husband and died there on November 15, 1974, at about the age of eighty-four.

On December 29, 1971, some two and one-half (2½) months following the death of her husband, Evelyn Sisk signed and executed an Assignment wherein she transferred and conveyed to John J. Cooper, Executor of the estate of Mark Sisk, '. . . all right, title, and interest she may have in and to each and every Bond, savings account and certificate of deposit listed on Exhibit A attached thereto . . .' (being all of the bonds, bank accounts, certificates of deposit, etc. held in their joint names), and being all of the personal assets of both parties, leaving Evelyn Sisk totally dependent upon the provisions of her husband's will for her care

and support. This Assignment was prepared by the Attorney for the Mark Sisk estate, was discussed with Evelyn Sisk by the Executor, and was signed by Evelyn Sisk in the presence of her personal physician, Dr. O. L. Merritt, the Nursing Home Administrator, Betty J. Howell, Assistant Nursing Home Administrator, Mabel Lane, the Defendant John J. Cooper, and the Attorney for the Mark Sisk Estate. Thereafter, and in the transfer of the United States Savings Bonds it was necessary that Evelyn Sisk sign each of said bonds and this was accomplished by Mr. Maurice Roberts, an official of the Merchants & Planters Bank of Newport, Tennessee, taking the bonds and related documents to the Nursing Home on three different occasions, the last being December 4, 1972, and personally obtaining her signature thereon.

Each of these witnesses, except for the Attorney, testified upon the trial to the execution of the Assignment stating that the Assignment was duly read and explained to Evelyn Sisk, including the effect that executing said instrument would have as to her future care and support; that she understood its contents; that she executed the same voluntarily; and that she was mentally capable of so understanding the nature and import thereof. The Defendant, John J. Cooper, denied influencing the execution of said Assignment in any way or manner.

The Plaintiff introduced evidence as to Evelyn Sisk's age, infirmities, and alleged lack of capacity to understand the purport of said Assignment, primarily from persons related to Evelyn Sisk and who would be her heirs. The evidence also revealed that Evelyn Sisk's relatives, or at least some of them, knew of the execution of the Assignment shortly after its execution.

. . . .

## IV

The Court finds from the preponderance of the evidence that Evelyn Sisk

possessed sufficient mental capacity to know and to understand the full nature, terms, and effect of her execution of the Assignment. This is positively testified to by her personal physician, the Administrator of the Nursing Home, a trained registered nurse with many years experience in these matters, and the Assistant Administrator of the Nursing Home, all disinterested witnesses. The Plaintiff's evidence chiefly related to the physical condition, infirmities, advanced age, etc., of Evelyn Sisk following the death of her husband and produced no evidence as to her mental condition or the lack of sufficient mental capacity on the date of the execution of the Assignment. The Plaintiff has failed to show by preponderance of the evidence that Evelyn Sisk lacked such mental capacity as to void her execution of said Assignment.

... It must be borne in mind that the Defendant, John Junior Cooper, was the duly appointed, qualified and acting Executor of the Mark Sisk Estate and that as such it was his duty to marshall the assets and to fully carry out the directions of the Will. In that Will the Testator specifically pointed out the existence of these personal assets, the fact that such were held in their joint names, that notwithstanding such he claimed sole ownership thereof, and directed his Executor to reduce the same to cash and to distribute the same in accordance therewith, including the full and complete care of his wife, if she survived him. It then became the duty of the Executor to investigate and to obtain such assets, provided that the same was done in a proper and legal manner. The record shows the Executor to have consulted with his Attorney pertaining thereto, followed the advice of the Attorney, and nothing appears in the record to indicate that he or his attorney did more than that reasonably to be expected of them under the circumstances. The obtaining of the Assignment was not done in secret, or surreptitiously, nor was it done in bad faith or for personal gain. Additionally, Mrs. Sisk lived for approximately three (3) years following the execution of the Assignment, during which time she could have challenged the same if it were not in keeping with her wishes. Likewise, some of her relatives, who also had knowledge of the execution of the Assignment, could have intervened on her behalf if it had been deemed not to be the wishes of Mrs. Sisk, or to her best interests, or that she had been wrongfully induced to execute the same. The fact is that Evelyn Sisk, from the date of the execution of the Assignment and to the date of her death approximately three (3) years later, was fully cared and provided for by the Defendant Executor of her husband's estate in accordance with the provisions of her husband's Will and from the assets which she made available by the execution of the Assignment."

The applicable law is found in the following paragraphs of *Richmond v. Christian, supra.*

"It is well established that when two parties enter into a confidential or fiduciary relationship and the dominant party receives a gift or other benefit from the other party a presumption arises that some improper advantage was taken '... either of the confidential relation existing ... or of the weakness and fraility of the party from whom the benefit was received, ...' thus rendering the transaction invalid. *Graves v. White,* 63 Tenn. 38, 4 Baxt. 38 (1874); *Turner v. Leathers,* 191 Tenn. 292, 232 S.W.2d 269 (1950); *Roberts v. Chase, et al.,* 25 Tenn.App. 636, 166 S.W.2d 641 (1942); *Hollis v. Thomas,* 42 Tenn.App. 407, 303 S.W.2d 751 (1957).

The presumption of invalidity, however, is rebuttable and the rule in this State is that clear and convincing evidence of fairness will suffice. Proof that the donor received independent advice respecting the consequences and advisability of the gift is one example, but not the only one, of such proof of fairness. *Roberts v. Chase, supra; Peoples Bank v. Baxter, et al.,* 41 Tenn.App. 710, 298 S.W.2d 732 (1956); See also *Hester v. Hester,* 81 Tenn. 189, 13 Lea. 189 (1884)." *Id.* at 107–08.

It is clear that proof of fairness may be established by clear and convincing evidence that does not include proof of independent advice.

It should be remembered that the chancellor had no reason to make a finding of whether the evidence of fairness was clear and convincing so as to rebut the presumption of invalidity because he did not find the existence of a confidential or fiduciary relationship. No doubt that is why the chancellor made no specific reference to the testimony that when the documents were read and the effect thereof explained to Mrs. Sisk she said, "Well, if this is what Mark wants, this is what I want."

The presumption of invalidity exists because it is assumed that the dominant party has taken some improper advantage of the weakness and frailty of the assignor and has reaped a benefit from the transfer. We think the proof is clear and convincing that Mrs. Sisk conveyed the assets to her husband's estate in response to her husband's influence and dominance, expressed in his will and not from any act or persuasion on the part of Cooper. The only benefit to Cooper from the transfer will arise from such increase in the executor's fee as may result from the inclusion of those assets. We find no indication in the evidence that his actions were motivated by that consideration. Cooper had a fiduciary duty to carry out the terms of the will, corresponding and equal to his duties to Mrs. Sisk. He sought and obtained his lawyer's advice and followed that advice by presenting the matter to Mrs. Sisk fully and fairly and, as we evaluate the evidence, her action was motivated by her desire to carry out her deceased husband's request and was not a response to any dominion or influence that Cooper may have had over her because of their relationship.

The judgment of the Court of Appeals is reversed and the decree of the chancellor dismissing the plaintiffs' action is affirmed. Costs are adjudged against plaintiffs.

HARBISON, C.J., and COOPER, BROCK and DROWOTA, JJ., concur.