**IN THE COURT OF APPEALS OF TENNESSEE**
**AT JACKSON**

FILED

March 2, 2000

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| KATHLEEN J. YOUNG-GREEN, | ) | |
| | ) | |
| | ) | |
| Plaintiff/Appellant, | ) | Shelby Chancery No. 98-0116-1 R.D. |
| | ) | |
| VS. | ) | Appeal No. W1999-00093-COA-R3-CV |
| | ) | |
| RICHARD W. GREEN, | ) | |
| | ) | |
| Defendant/Appellee. | ) | |

APPEAL FROM THE CHANCERY COURT OF SHELBY COUNTY
AT MEMPHIS, TENNESSEE
THE HONORABLE WALTER L. EVANS, CHANCELLOR

**J. MICHAEL FLETCHER**
Memphis, Tennessee
Attorney for Appellant

**BLANCHARD E. TUAL**
Memphis, Tennessee
Attorney for Appellee

**AFFIRMED**

**ALAN E. HIGHERS, J.**

**CONCUR:**

**W. FRANK CRAWFORD, P.J., W.S.**

**HOLLY KIRBY LILLARD, J.**

Kathleen Young-Green appeals from the judgment of the Chancery Court of Shelby County. Her complaint had sought imposition of a constructive trust over assets allegedly procured through the exercise of undue influence. The trial court dismissed the case under Rule 41.02 of the Tennessee Rules of Civil Procedure finding that the Plaintiff had not satisfied her burden of proof. For the reasons stated herein, we affirm the trial court's dismissal.

## I. Facts and Procedural History

The Plaintiff, Kathleen Young-Green ("Young-Green"), is the widow of Leonard Wesley Green ("Decedent") who died on January 28, 1997.[1] The Defendant, Richard W. Green ("Green"), is the son of the Decedent and the stepson of the Plaintiff.

Prior to their marriage, the Decedent and Young-Green entered into a prenuptial agreement. The agreement provided that, in the event of one spouse's death, the other party would not have a claim to the property of the deceased spouse which was accumulated before the parties married. In addition, the agreement also stated:

> "nothing contained in this Agreement shall, in any manner, bar or affect the right of the Second Party [Young-Green] to claim and receive any property of any nature or character that the First Party [Decedent], by last will and testament, or other testamentary disposition, or by instrument executed, or any act done during his life, may give, devise, transfer, assign and set over, . . . , to the Second Party."

Subsequent to the parties getting married, the Decedent executed a "Last Will and Testament." Under the will, Young-Green took the following: 1) all property of the Decedent acquired after the parties married, 2) a life estate in the marital home, and 3) ten thousand dollars ($10,000). The Decedent left the majority of his estate to the Defendant.

Prior to the marriage between the Decedent and Young-Green, the Decedent owned

---

[1] Young-Green was seventy-seven years old at the time of her husband's death. The marriage was the second for both parties, having begun in February of 1994.

an investment account at Paine Webber ("Paine Webber account"). On November 14, 1996, the Decedent changed the ownership of the Paine Webber account from that of sole ownership to a joint tenancy with right of survivorship between himself, Young-Green, and Green.[2]

On February 5, 1998, Young-Green filed the present complaint asserting claims for fraudulent inducement and conversion. The complaint alleged that, at the time of her husband's death, she, along with her husband and stepson, jointly held certain assets, namely the Paine Webber and First Tennessee accounts. The complaint goes on to state:

> On Monday, February 3, 1997, while the Plaintiff was physically ill and emotionally distraught and vulnerable as a result of the death of her beloved husband the previous Tuesday, the Defendant took the Plaintiff to the offices of PaineWebber Investments and, while representing to her that he would take care of her interests and of her personal needs, had the Plaintiff sign a document which transferred all of the assets in the joint PaineWebber account to the Defendant solely. Despite his assurances that he would take care of and treat her fairly, he deprived her of her rightful share of those funds and further attempted to deprive her of other assets through fraud, misrepresentation, and exploitation of his confidential relationship of trust with her.

_____Essentially, she alleged that Green took advantage of her emotional state and converted the funds in the Paine Webber account for his own use in violation of her rights to the account.

The complaint requested that the trial court hold the funds from the Paine Webber and First Tennessee accounts, as well as "all other such property" in constructive trust. The case was heard in the Chancery Court of Shelby County on January 13, 1999. At the conclusion of the Plaintiff's proof, the Defendant made a motion for a judgment, which was granted by the trial court. The trial court issued an oral ruling on that day and later adopted the oral ruling as its findings of fact and conclusions of law. In regards to the Paine Webber account, the trial court stated:

> It appears to the court, and the Court so finds, that Ms. Kathleen Young-Green waived her right to the funds in the PaineWebber account by signing

---

[2] In their briefs, the parties make reference to an account at First Tennessee Bank ("First Tennessee account") on which Young-Green was also added as a signatory.

3

the document transferring the funds in that account to Mr. Richard Green. The Court finds that there was consideration for that transfer, in that Ms. Green felt that she was complying with the terms of the Prenuptial Agreement and the Last Will and Testament of her deceased husband, and she elected to abide by the Prenuptial Agreement and his last Will and Testament in agreeing to transfer the assets in the PaineWebber account to Mr. Richard Green.

In addressing the undue influence claim, the court found "no undue influence was exercised," and, in fact, the trial court found no confidential relationship between the parties. Since Young-Green had failed to present sufficient evidence so as to require the Defendant to go forward, the court entered a judgment for the Defendant.

## II. Law and Analysis

The Appellant presents four issues for our review. Those issues are: 1) whether the Defendant exercised "undue influence" over the Plaintiff, 2) whether proof of a "confidential relationship" was required as a prerequisite to the creation of a constructive trust, 3) whether there was conversion of the financial accounts by the Defendant, and 4) whether the rights given to the Plaintiff under the Prenuptial Agreement and Last Will and Testament served as consideration for the Plaintiff's waiver of her rights in the financial accounts.

*Standard of review*

In pertinent part, Rule 41.02(2) of the Tennessee Rules of Civil Procedure provides:

> After the plaintiff, in an action tried by the court without a jury, has completed the presentation of plaintiff's evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief.

When such a motion is made, the trial court must impartially weigh and evaluate the evidence just as though it were making findings of fact and conclusions of law after presentation of all the evidence. Atkins v. Kirkpatrick, 823 S.W.2d 547, 552 (Tenn. Ct.

4

App. 1991). If the plaintiff's case has not been established by a preponderance of the evidence, the case should be dismissed if, on the facts found in the applicable law, the plaintiff has shown no right to relief. Id. (citing City of Columbia v. C.F.W. Constr. Co., 557 S.W.2d 734 (Tenn. 1977).

Our review of a dismissal under T.R.C.P. Rule 41.02(2) is controlled by Rule 13(d) of the Tennessee Rules of Appellate Procedure. The findings of fact by the trial court in granting such a motion are accompanied by a presumption of correctness and, unless the preponderance of the evidence is otherwise, those findings must be affirmed. College Grove Water Utility District v. Bellenfant, 670 S.W.2d 229 (Tenn. Ct. App. 1984); Akbari v. Horn, 641 S.W.2d 506, 508 (Tenn. Ct. App. 1982).

*Undue Influence and Confidential Relationship*

A presumption of undue influence arises where a confidential or fiduciary relationship exists together with a transaction by which the dominant party obtains a benefit from the other party. Matlock v. Simpson, 902 S.W.2d 384, 385 (Tenn. 1995) (citing Richmond v. Christian, 555 S.W.2d 105 (Tenn. 1977); Hogan v. Cooper, 619 S.W.2d 516 (Tenn. 1981); Brown v. Weik, 725 S.W.2d 938 (Tenn. Ct. App. 1983); Estate of Depriest v. Allen, 733 S.W.2d 74 (Tenn. Ct. App. 1986) . The party seeking to rescind a conveyance based on undue influence has the burden of proof. Williamson v. Upchurch, 768 S.W.2d 265 (Tenn. Ct. App. 1988). The inquiry is whether the weaker party's decision was free and independent, or whether it was induced by the dominant party. Id.

Any consideration of undue influence must begin with the question of whether a confidential relationship existed between Young-Green and Green.[3] Unless the relationship between the parties is such that the law will impute a confidential relationship, the burden of proof is upon the party who alleged the existence of a confidential relationship. See Parham v. Walker, 568 S.W.2d 622, 624 (Tenn. Ct. App. 1978). In the present case, that burden falls upon Young-Green.

_____

[3] The showing of a fiduciary relationship would also suffice, but there has been no allegation that such a relationship existed nor does the record lend support for such a finding.

5

In Kelly v. Allen, 558 S.W.2d 845 (Tenn. 1977), the Tennessee Supreme Court considered the question of whether a confidential relationship existed between a mother and daughter. The court found that such a relationship is not a *per se* confidential relationship. Kelly, 558 S.W.2d at 848. Instead, the court required that elements of dominion and control that would tend to destroy the free agency of the donor be shown to invoke the presumption of undue influence.

An example of a *per se* or "legal confidential relationship" is found in Parham v. Walker, 568 S.W.2d 622 (Tenn. Ct. App. 1978). In Parham, the legal relationship of conservator-ward existed between the beneficiary and testatrix at the time of the execution of the will. Parham, 568 S.W.2d at 623. Citing Kelly, the court noted the distinction between "legal confidential relationships" and the confidentiality inherent in "family and other relationships." Parham, 568 S.W.2d at 623. The latter circumstance places the burden of proving dominion and control on the party asserting the confidential relationship, while the former relieves that party of such a burden. The Parham court held that proof of the conservator-ward relationship was proof, as a matter of law, of the existence of a confidential relationship, thereby giving rise to the presumption of invalidity. Id.

In the present case, there is no "legal confidential relationship." The relationship between the parties came about through the marriage of the Defendant's father and the Plaintiff. Moreover, the record fails to show an evolution of the relationship which might imply the sort of legal confidential relationship contemplated in Parham. Therefore, resolution of this case centers on the question of whether the Defendant exercised dominion and control so as to "destroy the free agency" of the Plaintiff. Such a determination is inherently factual in nature, and we are bound by the aforementioned limits imposed by Rule 13(d) of the Tennessee Rules of Appellate Procedure. The trial court found no confidential relationship to exist between the parties, and we find nothing in the record to indicate otherwise. However, even if it were assumed that a confidential relationship existed, we would still be compelled to affirm the trial court decision. The law

6

only precludes the exercise of undue influence, as opposed to mere influence over a capable mind.  Parham, 568 S.W.2d at 624 (citing Patterson v. Mitchell, 9 Tenn.App. 662 (Tenn. Ct. App. 1929)).  Young-Green's allegation of grief, without more, cannot take the place of the proof needed to show undue influence.[4]

*Allegation of Conversion*

Young-Green alleged that Green converted the funds from the financial accounts for his own personal use in violation of her rights in the accounts.[5]  Conversion is "the appropriation of [property] to the party's own use and benefit, by the exercise of dominion over it, in defiance of plaintiff's right."  Mammoth Cave Prod. Credit Ass'n. v. Oldham, 569 S.W.2d 833, 836 (Tenn. Ct. App. 1977).  Undoubtedly, Young-Green had rights in the Paine Webber account by virtue of her being added as a joint account-holder.  However, the trial court found that Young-Green had waived her rights in the account by signing it over to Green.

An effective waiver is defined as:

a voluntary relinquishment or renunciation of some right, a foregoing or giving up of some benefit or advantage, which, but for such a waiver, he would have enjoyed.  It may be proved by express declaration;  or by acts and declarations manifesting an intent and purpose not to claim the supposed advantage;  or by a course of acts and conduct, or by so neglecting and failing to act, as to induce a belief that it was his intention and purpose to waive.

---

[4] We do not, in any way, wish to trivialize Ms. Young-Green's feelings at the death of her husband. We fully believe that her grief was both real and intense. However, we do not feel that the grief which occurs at the death of a loved one automatically renders a person unsound of mind.

[5] In regards to the financial accounts, the trial court considered the Paine Webber account to be the only account at issue.  The trial court ruled, and we agree, that Young-Green had no rights in the First Tennessee account.  After her marriage to the Decedent, Young-Green was added as a signatory on that account.  However, her own testimony at the trial of this action indicates that she never had any rights in the account and her status as a signatory was for convenience, since the Decedent's son lived some three hundred miles away.

. . .

Q:      Okay. On the First Tennessee Bank account, you never wrote any checks out of that bank account, did you?

A:      No, I wasn't supposed to write - - that was for emergencies, should he [Decedent] become unable to write checks, to keep Richard [Green] from having to come up there to write checks.

. . .

The trial court found it to be "clear" that there was no conversion of that account.  Given Young-Green's own testimony, we find no error in regards to this aspect of the trial court decision.

7

Baird v. Fidelity-Phenix Fire Ins. Co., 162 S.W.2d 384 (1942). We have already determined that Young-Green's signing over of the account was not the product of any undue influence on the part of Green. In fact, testimony in the record indicates that Young-Green voluntarily and intentionally signed over the account. Therefore, we agree with the trial court's determination that Young-Green made a voluntary waiver of her rights in the Paine Webber account. Green did not take the Paine Webber account in "defiance" of Young-Green's rights but, rather, he took the account through her voluntary relinquishment of her rights in the account. As such, there can be no conversion.

Finally, our review of the record reveals no basis for imposition of a constructive trust. Tennessee courts have employed equitable devices, such as a constructive trust, to avoid the unjust enrichment of a person who:

> by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal title to property which he ought not, in equity and good conscience hold and enjoy.

Rowlett v. Guthrie, 867 S.W.2d 732, 734 (Tenn. Ct. App. 1993) (quoting Livesay v. Keaton, 611 S.W.2d 581, 584 (Tenn. Ct. App. 1980)); see also Burleson v. McCrary, 753 S.W.2d 349, 353 (Tenn.1988). As Judge Cardozo noted, "[a] constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest equity converts him into a trustee." Holt v. Holt, 995 S.W.2d 68, 71 (Tenn. 1999)(citing Beatty v. Guggenheim Exploration Co., 225 N.Y. 380, 122 N.E. 378, 380-81 (1919)). The trial court failed to find, and the record fails to show, any acts on the part of Green which would justify the invocation of a constructive trust. We, therefore, agree with the trial court decision in this regard.

**Conclusion**

For the forgoing reasons, we affirm the decision of the trial court. Costs are taxed against the Appellant, Kathleen Young-Green, for which execution may issue if necessary.

_____
HIGHERS, J.

CONCUR:

_____
CRAWFORD, P.J., W.S.

_____
LILLARD, J.