IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON

## BILLY JOE CHILDRESS v. NATASHA BARNES CURRIE, both individually and as administrator C.T.A. of the ESTATE OF VIRGINIA MARY LEONARD,

**Direct Appeal from the Circuit Court for Lauderdale County**
**No. 5029     Joseph H. Walker, Judge**

---

**No. W1999-00471-COA-R3-CV - Decided May 15, 2000**

---

In this dispute, Plaintiff Billy Joe Childress contests a will executed by Virginia Mary Leonard ("the Decedent") on May 22, 1997, the sole beneficiary of which is Defendant Natasha Barnes Currie. A jury found that the Decedent had testamentary capacity to execute the May 22, 1997 will and that there was clear and convincing evidence to overcome the presumption that Ms. Currie exercised undue influence over the Decedent. Upon a post-trial motion filed by Mr. Childress, however, the trial court set aside the jury verdict. For the reasons set forth below, we reverse the ruling of the trial court and reinstate the jury verdict in favor of Ms. Currie.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed; and Remanded**

FARMER, J., delivered the opinion of the court, in which CRAWFORD, P.J., W.S., and LILLARD, J., joined.

Charles W. Fowler and Adam F. Glankler, Memphis, Tennessee, for the appellant, Natasha Barnes Currie.

J. Thomas Caldwell, Ripley, Tennessee, for the appellee, Billy Joe Childress.

**OPINION**

Ms. Currie is the granddaughter of Elizabeth Barnes, who was the Decedent's second cousin. Mr. Childress was a friend and former employer of the Decedent. On February 16, 1994, the Decedent executed a will leaving her entire estate to Mr. Childress. In April of 1997, Ms. Currie began living with the Decedent on a part time basis and helping the Decedent care for herself and her home. By May of 1997, Ms. Currie was living with and assisting the Decedent on a full time basis. On May 5, 1997, Ms. Currie drove the Decedent and Ms. Barnes to the Bank of Ripley, where the Decedent cashed in $4,374.91 of an $8,446.22 certificate of deposit and arranged for Ms. Barnes' name to be placed on the certificate of deposit. On May 22, 1997, at the Decedent's request, Ms. Currie drove the Decedent and Ms. Barnes to Currie's Funeral Home, where the Decedent purchased

a prearranged funeral plan from Frank Currie[1] for the sum of $5,421.00. After purchasing the funeral plan, the Decedent asked Mr. Currie to draft a power of attorney in favor of Ms. Currie and a will leaving her entire estate to Ms. Currie. Mr. Currie then drafted and the Decedent executed a power of attorney in favor of Ms. Currie, as well as a will stating as follows:

> I, Virginia M. Leonard, of Lauderdale County, State of Tennessee, City of Ripley, the undersigned hereby declare and appoint Natasha Barnes Currie the right to handle any and all of my business and to live with me. At the time of my death Natasha Barnes Currie will have all of my possessions.

On June 10, 1997, the Decedent was admitted to the hospital, where she was treated by Dr. Luis Wong. She was subsequently transferred to the geriatric/psychiatric unit of the hospital and treated by Dr. Louis Wells. On July 3, 1997, the Decedent was discharged to a nursing home, where she died sixteen days later.

On July 31, 1997, the Lauderdale County Probate Court admitted the Decedent's February 1994 will to probate and appointed Mr. Childress to serve as the executor of the Decedent's estate. In September of 1997, Ms. Currie filed a petition contesting the Decedent's February 1994 will and offering the Decedent's May 1997 will for probate. In his response to the petition, Mr. Childress alleged that the Decedent did not have testamentary capacity to execute the May 1997 will and that the Decedent signed the May 1997 will as a result of undue influence. The probate court subsequently entered an order temporarily suspending the letters testamentary previously issued to Mr. Childress. In October of 1997, Mr. Childress filed a complaint contesting the validity of the Decedent's May 1997 will. Thereafter in November of 1997, the probate court admitted the Decedent's May 1997 will to probate and appointed Ms. Currie as the administrator, C.T.A. of the Decedent's estate. Additionally, at the request of both parties, the matter was transferred to the Lauderdale County Circuit Court for a jury trial pursuant to section 32-4-101 of the Tennessee Code Annotated.[2] The parties presented their proof on February 22, 23, and 24, 1999, after which Mr.

---

[1]Although Frank Currie is not directly related to Natasha Barnes Currie, he is the uncle of Ms. Currie's former husband.

[2]This provision states as follows:

> Where the validity of any last will or testament, written or nuncupative, is contested, the court having probate jurisdiction over such last will or testament shall cause the fact to be certified to the circuit court, and send to the court the original will, and shall require the contestant to enter into bond, with surety, in the penal sum of five hundred dollars ($500), payable to the executor mentioned in the will, conditioned for the faithful prosecution of the suit, and, in case of failure therein, to pay all costs that may accrue thereon.

Tenn. Code Ann. § 32-4-101 (1984).

Childress made a motion for a directed verdict, arguing (1) that the burden is on Ms. Currie to prove by clear and convincing evidence the fairness of the transaction, (2) that the only way to show the fairness of the transaction is by proving that the Decedent received independent advice prior to executing her May 1997 will, and (3) that Ms. Currie had not presented any evidence suggesting that the Decedent received independent advice prior to executing the May 1997 will. The court took the motion under advisement. The court then instructed and submitted two questions to the jury, as follows:

> 1. On May 22, 1997, at the time of the execution of the document, did Virginia Leonard have the mental competency to make a will?

> 2. Did the proponent of the will show by clear and convincing evidence the fairness of the transaction and nonexistence of undue influence at the time of the execution of the document?

The jury answered both of these questions in the affirmative. An order reciting the jury's verdict was entered by the circuit court on March 1, 1999. Mr. Childress subsequently filed a motion for a new trial and a motion for a judgment in accordance with his motion for a directed verdict, which the court had previously taken under advisement. On April 12, 1999, the circuit court issued an order granting Mr. Childress' motion for a directed verdict and setting aside the jury's finding regarding the issue of undue influence. In this order, the court specifically found that the Decedent did not receive independent advice prior to executing her May 1997 will and that, under the circumstances of the case at bar, proof of independent advice was the only way to rebut the presumption of undue influence and show the fairness of the transaction. Ms. Currie subsequently filed a motion to alter or amend the circuit court's April 12, 1999 ruling, which was denied by the court. This appeal by Ms. Currie followed.

The issues presented on appeal, as we perceive them, are as follows:

1. Did the trial court err in instructing the jury that, as a matter of law, there is a presumption that the Decedent was under the undue influence of Ms. Currie at the time that she executed the May 1997 will?

2. Did the trial court err in granting Mr. Childress' motion for a directed verdict and setting aside the jury's finding that Ms. Currie had proven by clear and convincing evidence the fairness of the transaction and that the Decedent was not under undue influence at the time that she executed the May 1997 will?

-3-

Ms. Currie appeals from the decision of the circuit court to grant Mr. Childress' motion for a directed verdict. In ruling on the motion for a directed verdict, the circuit court reached certain legal conclusions that are subject to *de novo* review and are not accompanied by a presumption of correctness. *See, e.g., Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen and Ginsburg, P.A.*, 986 S.W.2d 550, 554 (Tenn. 1999); T.R.A.P. 13(d). To the extent, however, that the court's ruling on the motion for a directed verdict was based on its findings of fact, we must review the court's decision taking the strongest legitimate view of the evidence in favor of the non-moving party which, in the case at bar, is Ms. Currie. *See Ezell v. Associates Capital Corp.*, 518 S.W.2d 232, 233 (Tenn. 1974); *United Brake Sys., Inc. v. American Envtl. Protection, Inc.*, 963 S.W.2d 749, 754 (Tenn. Ct. App. 1997); *Harrogate Corp. v. Systems Sales Corp.*, 915 S.W.2d 812, 817 (Tenn. Ct. App. 1995); *Souter v. Cracker Barrel Old Country Store, Inc.*, 895 S.W.2d 681, 683 (Tenn. Ct. App. 1994). We must remove any conflict in the evidence by construing the evidence in the light most favorable to Ms. Currie and discarding all countervailing evidence. *See Ezell*, 518 S.W.2d at 233; *United Brake Sys., Inc.*, 963 S.W.2d at 754; *Harrogate Corp.*, 915 S.W.2d at 817; *Souter*, 895 S.W.2d at 683; *Underwood v. HCA Health Servs. of Tennessee, Inc.*, 892 S.W.2d 423, 425 (Tenn. Ct. App. 1994). If, after evaluating the evidence in this manner, it is determined that reasonable minds could not disagree regarding the conclusions to be drawn from the evidence, then we must affirm the circuit court's decision to grant Mr. Childress' motion for a directed verdict. *See United Brake Sys., Inc.*, 963 S.W.2d at 754; *Underwood*, 892 S.W.2d at 426. If, however, there is any doubt regarding the proper conclusions to be drawn from the evidence, we must reverse the court's ruling with respect to the motion. *See United Brake Sys., Inc.*, 963 S.W.2d at 754; *Souter*, 895 S.W.2d at 683.

We first address whether the circuit court erred in granting Mr. Childress' motion for a directed verdict and setting aside the jury's finding that Ms. Currie had proven by clear and convincing evidence the fairness of the transaction and the nonexistence of undue influence. In its April 12, 1999 order, the court found (1) that, under the circumstances of the case at bar, the only way in which Ms. Currie could have overcome the presumption of undue influence was by proving that the Decedent had received independent advice prior to the execution of her May 1997 will and (2) that, as a matter of law, the Decedent did not receive independent advice prior to executing the May 1997 will. On appeal, Ms. Currie argues that the circuit court improperly placed on her the burden of proving the fairness of the transaction. Assuming, however, that the circuit court was correct with respect to the burden of proof in the case at bar, Ms. Currie contends that the court erred in its conclusion that the only way to prove the fairness of the transaction was by showing that the Decedent received independent advice. Finally, assuming that proof of independent advice was necessary in order to show the fairness of the transaction, Ms. Currie argues that the Decedent received independent advice from Mr. Currie, who prepared the Decedent's May 1997 will and power of attorney.

It is well settled that the execution of an unrestricted power of attorney creates a confidential relationship between the person granting the power (the principal) and the person receiving the power (the attorney-in-fact). *See Matlock v. Simpson*, 902 S.W.2d 384, 386 (Tenn. 1995); *Johnson v. Craycraft*, 914 S.W.2d 506, 510 (Tenn. Ct. App. 1995); *Mitchell v. Smith*, 779 S.W.2d 384, 389

(Tenn. Ct. App. 1989); *Arnoult v. Griffin*, 490 S.W.2d 701, 706 (Tenn. Ct. App. 1972); *State ex rel. Teague v. Home Indem. Co.*, 442 S.W.2d 276, 279 (Tenn. Ct. App. 1967); *Black v. Pettigrew*, 270 S.W.2d 196, 202 (Tenn. Ct. App. 1953); *First Tennessee Bank Nat'l Ass'n v. Webb*, No. 03A01-9801-CH-00011, 1998 WL 906709, at *4 (Tenn. Ct. App. Dec. 22, 1998); *Kelley v. Martin*, No. 01A01-9803-PB-00157, 1998 WL 832413, at *3 (Tenn. Ct. App. Dec. 3, 1998); *Perry v. Rubley*, No. 01-A-01-9801-CH00044, 1998 WL 652587, at *5 (Tenn. Ct. App. Sept. 23, 1998); *Barham v. Cooper*, No. 02A01-9608-Ch-00200, 1997 WL 542922, at *3-4 (Tenn. Ct. App. Sept. 5, 1997); *Garton v. Norman*, No. 01-A-01-9511-CH-00514, 1996 WL 325215, at *5 (Tenn. Ct. App. June 14, 1996); *Puckett v. Krida*, No. 01-A-01-9403-CV-00100, 1994 WL 475863, at *6 (Tenn. Ct. App. Sept. 2, 1994); *Lindseth v. Norwood*, No. 33, 1990 WL 143221, at *2 (Tenn. Ct. App. Oct. 3, 1990). When there is a confidential relationship between two parties and the parties engage in a transaction involving the assets of the weaker party that benefits the dominant party, there is a presumption that the transaction is invalid. *See Matlock*, 902 S.W.2d at 386; *Elam v. Oakley*, 738 S.W.2d 169, 193 (Tenn. 1987); *Richmond v. Christian*, 555 S.W.2d 105, 107 (Tenn. 1977); *Estate of Depriest v. Allen*, 733 S.W.2d 74, 78 (Tenn. Ct. App. 1986); *Peoples Bank v. Baxter*, 298 S.W.2d 732, 737 (Tenn. Ct. App. 1956); *Roberts v. Chase*, 166 S.W.2d 641, 650-51 (Tenn. Ct. App. 1942). This presumption of invalidity is rebuttable upon a showing of the fairness of the transaction by clear and convincing evidence. *See Matlock*, 902 S.W.2d at 386 (overruling cases requiring only a preponderance of the evidence to overcome the presumption of invalidity); *Hogan v. Cooper*, 619 S.W.2d 516, 519 (Tenn. 1981); *Richmond*, 555 S.W.2d at 107; *Johnson*, 914 S.W.2d at 511; *Estate of Depriest*, 733 S.W.2d at 78-79; *Brown v. Weik*, 725 S.W.2d 938, 945 (Tenn. Ct. App. 1983); *Simmons v. Foster*, 622 S.W.2d 838, 840-41 (Tenn. Ct. App. 1981); *Roberts*, 166 S.W.2d at 651. The burden of proving the fairness of the transaction rests upon the dominant party to the relationship. *See Gordon v. Thornton*, 584 S.W.2d 655, 658 (Tenn. Ct. App. 1979); *Arnoult*, 490 S.W.2d at 708. One means of overcoming the presumption of invalidity is by proof that the weaker party received independent advice before engaging in the transaction that benefitted the dominant party. *See Hogan*, 619 S.W.2d at 519; *Richmond*, 555 S.W.2d at 107-8; *Estate of Depriest*, 733 S.W.2d at 79; *Peoples Bank*, 298 S.W.2d at 737. Proof of independent advice is not, however, an essential requirement. *See Hogan*, 619 S.W.2d at 520; *Richmond*, 555 S.W.2d at 108; *Estate of Depriest*, 733 S.W.2d at 79; *Gordon*, 584 S.W.2d at 658. The court may also look to the totality of the circumstances to determine whether the presumption has been overcome. *See, e.g., Gordon*, 584 S.W.2d at 658.

In the instant case, the Decedent executed a power of attorney in favor of Ms. Currie. She then executed a will benefitting Ms. Currie, which granted to Ms. Currie "the right to handle any and all of [the Decedent's] business and to live with [the Decedent]." Thus, the circuit court assumed in its order setting aside the jury verdict that there was a confidential relationship between the Decedent and Ms. Currie giving rise to the presumption that the Decedent's May 1997 will is invalid. It is undisputed, however, that Mr. Currie prepared the May 1997 will and power of attorney at the request of the Decedent. It is further undisputed that Ms. Currie did not participate in the execution of these documents and was not even present at the time that the documents were executed. Finally, it is undisputed that Ms. Currie was not aware that a power of attorney had been executed in her favor until the evening of May 22, 1997, after the execution of the Decedent's May 1997 will.

As noted above, the courts of this state have repeatedly held that the execution of an unrestricted power of attorney creates a confidential relationship between the principal and the attorney-in-fact. In each of these cases, the attorney-in-fact took some affirmative action to encourage or assist in the execution of the power of attorney, exercised the power of attorney, or, at the very least, was aware of the existence of the power of attorney. *See Matlock*, 902 S.W.2d at 385 (Simpson prepared and assisted in the execution of a power of attorney naming himself as Matlock's attorney-in-fact as well as a will naming himself as the beneficiary of the majority of the Matlock's estate.); *Johnson*, 914 S.W.2d at 507-09 (Johnson granted a power of attorney to Craycraft, who subsequently exercised the power of attorney (1) by writing a $200,000.00 check against Johnson's bank account to purchase a certificate of deposit that was placed in both his and Johnson's names and that was later used to purchase a certificate of deposit in Mr. Craycraft's name only and (2) by writing a $15,000.00 check against Johnson's bank account and depositing the check in an account owned by Craycraft and his wife.); *Mitchell*, 779 S.W.2d at 387 (Smith drove Bush to the office of an attorney who had been recommended by Smith's husband, where Bush subsequently executed a power of attorney in favor of Smith and a will naming Smith as a beneficiary of his estate.); *State ex rel. Teague*, 442 S.W.2d at 277-78 (Gooch executed a power of attorney in favor of his nephew, who subsequently persuaded Gooch to give him substantial amounts of cash to be distributed as gifts to himself and other members of Gooch's family.); *Black*, 270 S.W.2d at 202 (Black executed a power of attorney in favor of Homer, who subsequently exercised the power of attorney by handling Black's real estate and other business matters.); *Webb*, 1998 WL 906709, at *1-2, 5 (Webb executed a warranty deed transferring his interest in a piece of real property to his son and immediately thereafter executed a power of attorney in favor of his son.); *Kelley*, 1998 WL 1998 WL 832413, at *1 (Davis executed a power of attorney in favor of Kelley, who subsequently exercised the power of attorney (1) by using Davis' funds to purchase a home, which Kelley ultimately received in fee simple, and (2) by selling Davis' home and placing the proceeds of the sale in a bank account and a certificate of deposit bearing both Davis' and Kelley's names.); *Barham*, 1997 WL 542922, at *1-2 (Barham executed a power of attorney in favor of Cooper, after which Cooper began controlling Barham's finances and collecting income from the rental of Barham's home.); *Garton*, 1996 WL 325215, at *1-2 (Randolph executed a power of attorney in favor of Norman and, after Randolph was declared incompetent, Norman began handling Randolph's business affairs.); *Puckett*, 1994 WL 475863, at *1 (Hooper executed a power of attorney in favor of Krida, Krida began exercising the power of attorney, and Hooper subsequently executed a will leaving her entire estate to Krida and Puckett.); *Lindseth*, 1990 WL 143221, at *1 (Tedder executed a power of attorney in favor of Norwood and Norwood subsequently executed the power of attorney by removing approximately $40,000.00 from Tedder's bank account and placing it in a new account bearing the names of Norwood and Tedder's grandson and another new account bearing the names of Norwood and Tedder.). In the instant case, it is undisputed that Ms. Currie did not know that the Decedent had executed a power of attorney in her favor until after the execution of the Decedent's May 1997 will. In each of the cases cited above, however, there is no evidence suggesting that the attorney-in-fact was unaware of the existence of the power of attorney. Thus, these cases do not specifically address whether a confidential relationship exists between a principal and his or her attorney-in-fact when the attorney-in-fact has no knowledge, prior to the transaction from which the attorney-in-fact receives a benefit, that the principal has executed the power of attorney in his or her favor.

Although the execution of an unrestricted power of attorney creates a confidential relationship between the principal and his or her attorney-in-fact, this Court has previously held that such a relationship does not arise when, although executed, the power of attorney had not yet become effective at the time of the transaction benefitting the attorney-in-fact. In *Garton*, Marie Randolph executed a power of attorney in favor of her nephew Henry Norman, which specifically provided that it was to become effective upon Mrs. Randolph's disability or incapacity. *See Garton*, 1996 WL 325215, at *1-2. After Mrs. Randolph was subsequently declared by her doctor to be mentally incapacitated, Mr. Norman began exercising the power of attorney. *See id.* at *4. Three of the beneficiaries of Mrs. Randolph's will subsequently filed an action against Mr. Norman claiming that he had misused Mrs. Randolph's funds and exercised undue influence over her. *See id.* at *1. The three beneficiaries challenged all transactions between Mrs. Randolph and Mr. Norman that took place after the execution of the power of attorney in favor of Mr. Norman, arguing that the execution of the power of attorney created a confidential relationship between Mrs. Randolph and Mr. Norman. *See id.* at *3-4. It was Mr. Norman's contention, however, that a confidential relationship did not arise until after Mrs. Randolph was declared to be mentally incapacitated and the power of attorney became effective. *See id.* at *4. This Court agreed with Mr. Norman, stating that "a power of attorney that has not yet taken effect, and which may be altered or revoked at any time by the person granting it cannot be considered to be unrestricted." *Id.* at *5. More recently, in *McKinley v. Holt*, No. 03A01-9807-PB-00220, 1999 WL 233400 (Tenn. Ct. App. Apr. 15, 1999), we reaffirmed our holding in *Garton*, stating as follows:

> The power of attorney executed by Mr. McKinley contained the following restriction: "this power of attorney shall become effective upon my disability or incapacity, which shall be determined by the certification of my personal physician, but not until then. . . ." Although appellant argues that an unrestricted power of attorney was created, we agree with the trial court that the power of attorney never came into effect because Mr. McKinley was never certified by his physician as disabled or incapcitated[sic], and therefore, a confidential relationship as a matter of law did not exist.

*Id.* at *4.

In the case at bar, the power of attorney executed by the Decedent did not contain any restrictions similar to those contained in the powers of attorney executed in *Garton* and *McKinley*. Thus, the power of attorney technically became effective upon its execution by the Decedent. It is undisputed, however, that Ms. Currie had no knowledge of the power of attorney at the time that the Decedent executed her May 1997 will. Without knowledge of the power of attorney, it was impossible for Ms. Currie to exercise the rights granted to her in the power of attorney. Ms. Currie did not obtain this knowledge until the evening of May 22, 1997, after the execution of the Decedent's May 1997 will. As a practical matter, then, the power of attorney could not have been exercised by Ms. Currie when the Decedent executed her May 1997 will.

Under the circumstances of the case at bar, where Ms. Currie did not become aware that the Decedent had executed a power of attorney in her favor until after the Decedent executed her May 1997 will, we cannot say, as a matter of law, that there was a confidential relationship between Ms. Currie and the Decedent giving rise to the presumption that the Decedent's May 1997 will was procured by the undue influence of Ms. Currie. Rather, we hold that the circumstances of this case represent a narrow exception to the general rule that the execution of an unrestricted power of attorney creates a confidential relationship between the principal and his or her attorney-in-fact.[3] The language used in the circuit court's April 12, 1999 order granting Mr. Childress' motion for a directed verdict and setting aside the jury verdict demonstrates that the court assumed that there was a confidential relationship between Ms. Currie and the Decedent and consequently shifted the burden to Ms. Currie to prove the fairness of the transaction by clear and convincing evidence. Because, as indicated above, there was not such a relationship in the case at bar, we reverse the circuit court's order granting Mr. Childress' motion for a directed verdict and setting aside the jury verdict.

We next address whether the circuit court also erred when instructing the jury regarding the issue of undue influence. The court charged the jury in pertinent part as follows:

> The alleged will comes to you with a presumption that it is brought about by undue influence; that is, as a matter of law an unrestricted power of attorney in and of itself creates a confidential relationship between the parties. The existence of a confidential relationship followed by a transaction where the dominant party receives a benefit from the other party gives rise to a presumption of undue influence. This presumption can be rebutted by clear and convincing evidence of the fairness of the transaction.

> Currie, the proponent of the alleged will, has the burden of showing by clear and convincing evidence the fairness of the transaction and the nonexistence of undue influence.

In the previous section of this opinion, we held that, because Ms. Currie was unaware at the time that she was the Decedent's attorney-in-fact, there was not, as a matter of law, a confidential relationship between Ms. Currie and the Decedent when the Decedent executed her May 1997 will. Thus, we now conclude that the trial court erred when instructing the jury regarding the burden of proof in the case at bar. Despite this error, however, the jury returned a verdict in favor of Ms. Currie, specifically finding that Ms. Currie had proven the fairness of the transaction and the nonexistence of undue influence at the time that the Decedent executed the May 1997 will. Thus, we conclude that any error with respect to the instructions given to the jury was harmless.

---

[3]In light of this holding, we find it unnecessary to address whether the court also erred in its conclusion that the only way to show the fairness of the transaction was with proof of independent advice and whether the Decedent did, in fact, receive independent advice from Mr. Currie.

Because it was predicated on an erroneous conclusion of law, we reverse the circuit court's April 12, 1999 order and reinstate the jury verdict in favor of Ms. Currie. Costs on appeal are assessed against Billy Joe Childress, for which execution may issue if necessary.